Receipt Number

*566119*

*107*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

POINT CENTER FINANCIAL, INC., a
California corporation, individually and as
Designated Agent,

      Plaintiff

    v.

GROVE PARK HOMES, L.L.C., a Michigan
limited liability company, and RONALD P.
Lloyd, an individual, and GLENDA L. AULT,
an individual,

      Defendants.

_____/

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Exhibits A–J

Case: 2:08-cv-10125
Judge: Battani, Marianne O
Referral MJ: Majzoub, Mona K
Filed: 01-08-2008 At 04:30 PM
CMP POINT CENTER FINANCIAL V. GROVE
   PARK HOMES, ET AL (TAM)

## COMPLAINT

      NOW COMES Point Center Financial, Inc., individually and as Designated Agent

by and through its attorneys Pepper Hamilton LLP, and for its complaint against Grove Park

Homes, L.L.C., Ronald P. Lloyd, and Glenda L. Ault (collectively, "Defendants"), states as

follows:

### PARTIES, JURISDICTION AND VENUE

      1.     Point Center Financial, Inc. ("PCF") is a California corporation with its

principal place of business in San Juan Capistrano, California and brings this action on behalf of

itself and as Designated Agent (the "Secured Party" or "Plaintiff").

      2.     Defendant, Grove Park Homes, L.L.C. ("Grove Park") is a Michigan

limited liability company with its principal place of business located at 3062 Chandler Avenue,

Lincoln Park, Michigan 48146.

Dockets.Justia.com

3.      Defendant Ronald P. Lloyd ("Lloyd") is an individual and a managing member of Grove Park with an address of 14 Juniper Lane, Pinehurst, North Carolina 28374-8001.

4.      Defendant Glenda L. Ault ("Ault") is an individual and a managing member of Grove Park with a notice of address of 3062 Chandler Avenue, Lincoln Park, Michigan 48146

5.      This Court has subject matter jurisdiction based on 28 USC § 1332(a)(1) and (b) as the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs, and complete diversity of citizenship exists between the parties.

6.      Venue is proper in this Court pursuant to 28 USC § 1391(a) because: (i) the Defendants do business in this district, (ii) Grove Park's principal place of business is located in Lincoln Park, Michigan, (iii) a substantial portion of the events and omissions giving rise to the claims arose in this district, and (iv) the property which is the basis for this action is situated in this district.

## **BACKGROUND**

### LOANS

7.      On or about July 19, 2006, Grove Park borrowed from PCF the amount of $1,709,700 (the "Loans") in order to purchase certain real property with improvements located at Nancy, Morris, Margery and Grove Streets in Ypsilanti, Michigan (the "Property"). A complete listing of the street address comprising the Property is attached hereto and incorporated herein as Exhibit A.

8.      Grove Park simultaneously executed a secured promissory note (the "Note") in favor of PCF in the amount of $1,709,700. A true and complete copy of the Note is attached hereto and incorporated herein as Exhibit B.

9. To secure the obligations under the Note, Grove Park executed, among other things, a Mortgage, Security Agreement, Assignment of Leases and Rents and Fixture Filing[1] (the "Mortgage"), which grants to PCF a security interest in certain defined collateral, including, but not limited to, the Property, fixtures and improvement, rents, leases and the personal property. A true and complete copy of the Mortgage is attached hereto and incorporated herein as Exhibit C.

10. Simultaneous with Grove Park's execution of the Note and Mortgage, Lloyd executed a personal guaranty (the "Lloyd Guaranty"), which provided, among other things, that Lloyd absolutely and unconditionally guaranteed the full and punctual payment and performance of all obligations due and owing under the Note and Mortgage. A true and complete copy of the Lloyd Guaranty is attached hereto and incorporated herein as Exhibit D.

11. Simultaneous with Grove Park's execution of the Note and Mortgage, Ault executed a personal guaranty (the "Ault Guaranty"), which provided, among other things, that Ault absolutely and unconditionally guaranteed the full and punctual payment and performance of all obligations due and owing under the Note and Mortgage. A true and complete copy of the Ault Guaranty is attached hereto and incorporated herein as Exhibit E.

12. The Mortgage was properly recorded with the Washtenaw County Register of Deeds on July 31, 2006, *See* Exh. C. The UCC-1 fixture filing was properly recorded with the Washtenaw County Register of Deeds on July 31, 2006, as amended on December 28,

---

[1] The Mortgage is from Grove Park to National Financial Lending, Inc. ("Trustee") and Point Center Financial, Inc. ("Mortgage/Beneficiary"). On December 28, 2007, an Affidavit was filed by National Financial Lending, Inc. which, among other things, clarifies that it has no interest in the Mortgage. A time and complete copy of the Affidavit is attached hereto and incorporated herein as Exhibit C-1.

-3-

2007. A true and complete copy of the filed UCCs are attached hereto and incorporated herein as Exhibit F,-1 and F-2.

13. The UCC-1 was properly filed with the Secretary of State for the State of Michigan on October 31, 2006, as amended on December 18, 2007. A true and complete copy of the filed UCCs are attached hereto and incorporated herein as Exhibits G-1 and G-2.

14. Subsequent to July, 2006, PCF assigned a portion of its interest in the Note and Mortgage to certain investors (the "Assignments"). A complete listing of the investors is attached hereto as Exhibit H (the "Investors"). PCF still owns a portion of the Note and Mortgage.

15. All of the Assignments have been properly recorded with the Washtenaw County Register of Deeds.

16. Simultaneous with the assignments, PCF entered into a Loan Servicing Agreement with the Investors, which, among other things, authorizes PCF to act as the designated agent to bring actions on behalf of itself and the Investors.

17. The Secured Party holds a properly perfected security interest in all of the personal and real property interests of Grove Park relating to the Property.

### DEFAULT UNDER THE LOAN DOCUMENTS

18. The Note matured August 1, 2007 and was due and payable on August 1, 2007.

19. Grove Park was given notice of the maturation of the Note by letter dated May 3, 2007. A true and complete copy of the letter is attached hereto as Exhibit I.

20. Effective August 2, 2007, Grove Park and PCF entered into a General Release and Limited Forbearance Agreement Without Waiver, which provided, among other

things, that the Secured Party would not pursue its rights under certain specifically defined terms and conditions, including the payment by Grove Park of monthly interest payments in the amount of $17,097.00 for the months of August, September and October. A true copy of the Forbearance Agreement is attached hereto as Exhibit J.

21.     The Forbearance Agreement terminated on October 31, 2007, and Grove Park has made no payments on the Note since October, 2007.

22.     On December 14, 2007, Lenders, through its counsel, requested from Grove Park, among other things, provide an accounting of the receipts and disbursements from the Property and the applicable bank statements. Grove Park has not responded.

23.     Upon information and belief, Grove Park is collecting monthly rents from Tenants on the Property in the aggregate amount of $32,900.00.

24.     The summer taxes in the aggregate amount of $38,419.70 (the "Taxes") have not yet been paid, and as of September 14, 2007 began accruing interest and penalties.

25.     Grove Park has indicated that it is unable to pay to the Secured Party monthly interest payments in the amount of $17,097.00.

26.     As of December 19, 2007, Grove Park owes the Secured Party the amount of $1,819,682.76, which includes principal, interest, and default interest, plus continuing interest and fees and expenses incurred by the Secured Party in pursuing the Defendants.

27.     Given the inability of Grove Park to provide the requested financial information and the non-payment by the Defendants of the Taxes and the amount of the Note, or

even the monthly interest payment on the Note, the Secured Party is fearful that the Property may be exposed to damage, destruction and/or dissipation, and is concerned that out of the $32,900.00 Grove Park collects each month, the taxes have not been paid and there are no funds available to pay the Secured Party. The Property and rents received therefrom, constituting collateral of the Secured Party, are being dissipating.

## COUNT 1:  BREACH OF CONTRACT UNDER THE LOAN DOCUMENTS AS TO GROVE PARK

28.     Secured Party realleges the allegations of Paragraphs 1 through 27.

29.     The Note and Mortgage are a valid contract between the Secured Party and Grove Park.

30.     Pursuant to the Note and Mortgage Grove Park agreed to pay the entire indebtedness under the Note on August 1, 2007.

31.     Pursuant to Paragraph 17 of the Mortgage, Grove Park agreed to keep adequate books and records to account, and to provide to PCF any other information concerning the affairs of Grove Park which PCF may reasonably request.

32.     Despite repeated requests, the latest of which was made by counsel to Secured Party on December 14, 2007, Grove Park has failed to timely provide the financial information requested, including an accounting of the rents received and disbursed, and has failed to pay the amount due and owing on the Note.

33.     Grove Park has thereby breached the Mortgage and Note.

34.     Pursuant to Paragraph 20 of the Mortgage, Secured Party is entitled to all remedies available to it under law, including, but not limited "the immediate ex parte appointment of a receiver, without notice, to take possession of and protect the Mortgage Property and to operate it and collect the rents, issues and profits from it; and for purposes of

such appointment, Mortgagor agrees that same shall be necessary and required in the event the Mortgage/Beneficiary requests same." *See* Exh. C, ¶ 20(b).

35.    As of December 19, 2007, Grove Park owes to the Secured Party, the amount of $1,819,682.76, which represents principal interest and default interest.

**WHEREFORE**, Secured Party respectfully requests that this Court enter a judgment that:

A.    Determines and awards to Secured Party the amount due to the Secured Party by Grove Park pursuant to the Mortgage and Note;

B.    Awards Secured Party interest, attorneys' fees, and all other accrued amounts under the Note and Mortgage;

C.    Orders and enjoins Grove Park and its agents from damaging, destroying, concealing, disposing of or dissipating the value of the Property constituting the collateral of the Secured Party;

D.    Orders and enjoins Defendants and their agents from making any distributions or dividends, including salaries, fees and other compensation to Defendant Ault.

E.    Orders Secured Party its costs, including reasonable attorneys' fees authorized under the Note and Mortgage;

F.    Orders the appointment of a receiver to take charge of, manage, preserve, protect and oversee the operations of the Property, and after the payment of expenses of the receivership and after compensation to the receiver, to apply the net proceeds derived therefrom to the amounts owed Secured Party.

G.    Grants such other relief as this Court deems equitable and just.

#9147203 v1 (134255.2)

## COUNT II: BREACH OF CONTRACT UNDER PERSONAL GUARANTEE
## AS TO LLOYD

36. Secured Party realleges the allegations of Paragraphs 1 through 35.

37. The Lloyd Guaranty is a valid and binding contract between Lloyd and Secured Party.

38. Lloyd has breached the express terms of the Lloyd Guaranty by his failure to pay all sums now due and owing by Grove Park under the Note and Mortgage, as required by the express terms of the Lloyd Guarantee.

39. As a direct result of the breach by Lloyd of the Lloyd Guaranty, Secured Party has suffered damages in the amount of at least $1,819,682.76 as of December 19, 2007, plus all other amounts due and owing under the Note and Mortgage, including but not limited to, attorneys' fees and expenses and accruing interest.

**WHEREFORE**, Secured Party respectfully requests that this Court:

A. Determines and awards to Secured Party the amounts due by Lloyd pursuant to the Lloyd Guaranty;

B. Awards Secured Party interest, attorneys' fees and all other accrued amounts due under the Lloyd Guaranty:

C. Awards Secured Party the fees and costs associated with bringing this action; and

D. Awards Secured Party any other relief this Court deems just and proper.

## COUNT II: BREACH OF CONTRACT UNDER PERSONAL GUARANTEE
## AS TO AULT

40. Secured Party realleges the allegations of Paragraphs 1 through 35.

41. The Ault Guaranty is a valid and binding contract between Ault and Secured Party.

42.     Ault has breached the express terms of the Ault Guaranty by her failure to pay all sums now due and owing by Grove Park under the Note and Mortgage, as required by the express terms of the Guaranty.

43.     As a direct result of the breach by Ault of the Ault Guaranty, Secured Party has suffered damages in the amount of $1,819,682.76 as of December 19, 2007, plus all other amounts due and owing under the Note and Mortgage, including but not limited to, attorneys' fees and expenses and accruing interest.

**WHEREFORE**, Secured Party respectfully requests that this Court:

A.     Determines and awards to Secured Party the amounts due by Ault pursuant to the Ault Guaranty;

B.     Awards Secured Party interest, attorneys' fees and all other accrued amounts due under the Ault Guaranty;

C.     Awards Secured Party the fees and costs associated with bringing this action; and

D.     Awards Secured Party any other relief this Court deems just and proper.

Respectfully submitted,

*Kay Standridge Kress*

Kay Standridge Kress (P39339)
Pepper Hamilton LLP
Suite 3600
100 Renaissance Center
Detroit, Michigan 48243-1157
Telephone: (313) 393-7365

Attorneys for Center Point Financial, Inc.,
individually and as Designated Agent

Dated: 1|8|08



# Grove Park Homes
Collateral List

| House # | Street | Bldg | City | St | Zip | Tax ID # | Lot # |
|---|---|---|---|---|---|---|---|
| 2164 | Margery | 16 | Yipsilanti | MI | 48198 | K-11-24-108-026 | 1 |
| 2158 | Margery | 16 | Yipsilanti | MI | 48198 | K-11-24-108-023 | 4 |
| 2156 | Margery | 16 | Yipsilanti | MI | 48198 | K-11-24-108-022 | 5 |
| 2152 | Margery | 16 | Yipsilanti | MI | 48198 | K-11-24-108-020 | 7 |
| 2142 | Margery | 14 | Yipsilanti | MI | 48198 | K-11-24-108-017 | 10 |
| 2140 | Margery | 14 | Yipsilanti | MI | 48198 | K-11-24-108-016 | 11 |
| 2138 | Margery | 14 | Yipsilanti | MI | 48198 | K-11-24-108-015 | 12 |
| 2132 | Margery | 14 | Yipsilanti | MI | 48198 | K-11-24-108-012 | 15 |
| 2120 | Margery | 8 | Yipsilanti | MI | 48198 | K-11-24-108-008 | 19 |
| 2114 | Margery | 8 | Yipsilanti | MI | 48198 | K-11-24-108-005 | 22 |
| 2110 | Margery | 12 | Yipsilanti | MI | 48198 | K-11-24-108-003 | 24 |
| 2106 | Margery | 8 | Yipsilanti | MI | 48198 | K-11-24-108-001 | 26 |
| 2153 | Margery | 15 | Yipsilanti | MI | 48198 | K-11-24-109-018 | 27 |
| 2147 | Margery | 15 | Yipsilanti | MI | 48198 | K-11-24-109-015 | 30 |
| 2143 | Margery | 15 | Yipsilanti | MI | 48198 | K-11-24-109-013 | 32 |
| 2141 | Margery | 15 | Yipsilanti | MI | 48198 | K-11-24-109-012 | 33 |
| 2137 | Margery | 15 | Yipsilanti | MI | 48198 | K-11-24-109-010 | 35 |
| 2131 | Margery | 13 | Yipsilanti | MI | 48198 | K-11-24-109-009 | 36 |
| 2129 | Margery | 13 | Yipsilanti | MI | 48198 | K-11-24-109-008 | 37 |
| 2127 | Margery | 13 | Yipsilanti | MI | 48198 | K-11-24-109-007 | 38 |
| 2123 | Margery | 13 | Yipsilanti | MI | 48198 | K-11-24-109-005 | 40 |
| 2115 | Margery | 13 | Yipsilanti | MI | 48198 | K-11-24-109-001 | 44 |
| 2154 | Nancy | 2 | Yipsilanti | MI | 48198 | K-11-24-110-018 | 45 |
| 2152 | Nancy | 2 | Yipsilanti | MI | 48198 | K-11-24-110-017 | 46 |
| 2150 | Nancy | 2 | Yipsilanti | MI | 48198 | K-11-24-110-016 | 47 |
| 2148 | Nancy | 2 | Yipsilanti | MI | 48198 | K-11-24-110-015 | 48 |
| 2144 | Nancy | 3 | Yipsilanti | MI | 48198 | K-11-24-110-013 | 50 |
| 2142 | Nancy | 2 | Yipsilanti | MI | 48198 | K-11-24-110-012 | 51 |
| 2140 | Nancy | 2 | Yipsilanti | MI | 48198 | K-11-24-110-011 | 52 |
| 2132 | Margery | 14 | Yipsilanti | MI | 48198 | K-11-24-110-009 | 54 |
| 2126 | Margery | 14 | Yipsilanti | MI | 48198 | K-11-24-110-006 | 57 |
| 2118 | Margery | 8 | Yipsilanti | MI | 48198 | K-11-24-110-002 | 61 |
| 2116 | Margery | 8 | Yipsilanti | MI | 48198 | K-11-24-110-001 | 62 |
| 3203 | Grove | 17 | Yipsilanti | MI | 48198 | K-11-24-181-002 | 64 |
| 3199 | Grove | 17 | Yipsilanti | MI | 48198 | K-11-24-181-003 | 65 |
| 3195 | Grove | 17 | Yipsilanti | MI | 48198 | K-11-24-181-004 | 66 |
| 3191 | Grove | 17 | Yipsilanti | MI | 48198 | K-11-24-181-005 | 67 |
| 3187 | Grove | 17 | Yipsilanti | MI | 48198 | K-11-24-181-006 | 68 |
| 3183 | Grove | 17 | Yipsilanti | MI | 48198 | K-11-24-181-007 | 69 |
| 3179 | Grove | 17 | Yipsilanti | MI | 48198 | K-11-24-181-008 | 70 |
| 3175 | Grove | 17 | Yipsilanti | MI | 48198 | K-11-24-181-009 | 71 |
| 2167 | Nancy | 1 | Yipsilanti | MI | 48198 | K-11-24-111-026 | 76 |
| 2163 | Nancy | 1 | Yipsilanti | MI | 48198 | K-11-24-111-024 | 78 |
| 2159 | Nancy | 1 | Yipsilanti | MI | 48198 | K-11-24-111-022 | 80 |
| 2157 | Nancy | 1 | Yipsilanti | MI | 48198 | K-11-24-111-021 | 81 |
| 2153 | Nancy | 1 | Yipsilanti | MI | 48198 | K-11-24-111-019 | 83 |

# Grove Park Homes

Collateral List

| House # | Street | Bldg | City | St | Zip | Tax ID # | Lot # |
|---------|--------|------|------|-----|------|----------|-------|
| 2143 | Nancy | 3 | Yipsilanti | MI | 48198 | K-11-24-111-016 | 86 |
| 2141 | Nancy | 3 | Yipsilanti | MI | 48198 | K-11-24-111-015 | 87 |
| 2137 | Nancy | 3 | Yipsilanti | MI | 48198 | K-11-24-111-013 | 89 |
| 2135 | Nancy | 3 | Yipsilanti | MI | 48198 | K-11-24-111-012 | 90 |
| 2129 | Nancy | 3 | Yipsilanti | MI | 48198 | K-11-24-111-009 | 93 |
| 2123 | Nancy | 5 | Yipsilanti | MI | 48198 | K-11-24-111-008 | 94 |
| 2119 | Nancy | 5 | Yipsilanti | MI | 48198 | K-11-24-111-006 | 96 |
| 2109 | Nancy | 5 | Yipsilanti | MI | 48198 | K-11-24-111-002 | 100 |
| 3293 | Morris | 6 | Yipsilanti | MI | 48198 | K-11-24-105-001 | 102 |
| 3285 | Morris | 7 | Yipsilanti | MI | 48198 | K-11-24-105-003 | 104 |
| 3269 | Morris | 8 | Yipsilanti | MI | 48198 | K-11-24-105-007 | 108 |
| 3265 | Morris | 7 | Yipsilanti | MI | 48198 | K-11-24-105-008 | 109 |
| 3249 | Morris | 8 | Yipsilanti | MI | 48198 | K-11-24-105-012 | 113 |
| 3233 | Morris | 8 | Yipsilanti | MI | 48198 | K-11-24-105-016 | 117 |
| 3229 | Morris | 8 | Yipsilanti | MI | 48198 | K-11-24-105-017 | 118 |
| 3225 | Morris | 8 | Yipsilanti | MI | 48198 | K-11-24-105-018 | 119 |
| 3175 | Morris | 9 | Yipsilanti | MI | 48198 | K-11-24-106-004 | 124 |
| 3171 | Morris | 9 | Yipsilanti | MI | 48198 | K-11-24-106-005 | 125 |
| 3135 | Morris | 11 | Yipsilanti | MI | 48198 | K-11-24-106-012 | 132 |
| 3131 | Morris | 11 | Yipsilanti | MI | 48198 | K-11-24-106-013 | 133 |
| 3123 | Morris | 11 | Yipsilanti | MI | 48198 | K-11-24-106-015 | 135 |
| 3115 | Morris | 11 | Yipsilanti | MI | 48198 | K-11-24-106-017 | 137 |
| 3194 | Morris | 10 | Yipsilanti | MI | 48198 | K-11-24-107-001 | 139 |
| 3186 | Morris | 10 | Yipsilanti | MI | 48198 | K-11-24-107-003 | 141 |
| 3182 | Morris | 10 | Yipsilanti | MI | 48198 | K-11-24-107-004 | 142 |
| 3162 | Morris | 10 | Yipsilanti | MI | 48198 | K-11-24-107-009 | 147 |
| 3158 | Morris | 10 | Yipsilanti | MI | 48198 | K-11-24-107-010 | 148 |
| 3154 | Morris | 10 | Yipsilanti | MI | 48198 | K-11-24-107-011 | 149 |
| 3150 | Morris | 10 | Yipsilanti | MI | 48198 | K-11-24-107-012 | 150 |
| 3146 | Morris | 10 | Yipsilanti | MI | 48198 | K-11-24-107-013 | 151 |



PRO     SSORY NOTE SECURED BY MOR    AGE

$1,709,700.00

Date: July 19, 2006
San Juan Capistrano, CA

FOR VALUE RECEIVED, the undersigned, Grove Park Homes L.L.C., a Michigan Limited Liability Company ("Borrower"), whose address for purposes of this Promissory Note ("Note") is 3062 Chandler Avenue, Lincoln Park, MI 48196, PROMISES TO PAY to Point Center Financial, Inc., a California corporation (the "Lender"), at 30900 Rancho Viejo Road, Suite 100, San Juan Capistrano, CA 92675, or such other place as the Lender may specify, the principal sum of One Million Seven Hundred Nine Thousand Seven Hundred and No/100 Dollars, ($1,709,700.00), together with interest thereon, to be paid in lawful money of the United States of America. This Note evidences a loan from Lender to Borrower in the original principal sum stated above (the "Loan").

1. Security. This Note is secured, without limitation, by that certain Mortgage, Security Agreement and Fixture Filing with Assignment of Rents and Agreements (the "Mortgage") executed as of or about even date herewith, given by Borrower to National Financial Lending, Inc., a California corporation, as Trustee, in trust for the benefit of Lender, on certain real property and personal property defined therein as the Mortgage Property.

2. Interest. Borrower promises to pay interest on the unpaid principal balance of the Loan from the day upon which funds are deposited with the closing agent, and/or when any proceeds of the Loan are advanced on behalf of Borrower (the "Date of Disbursement") until repayment in full, at the rate per annum equal to the "Interest Rate," as defined below. The term "Interest Rate," as used herein, means the rate or rates of interest applicable to all or portions of the outstanding balance of the Loan, as set forth below. Interest on this Note shall be computed on the basis of a 365-day year.

(a) "Interest Rate." The "Interest Rate" shall mean a fixed rate of interest equal to Twelve percent (12.0%) per annum.

(b) "Default Rate." From and after the Maturity Date, or an earlier date on which all sums owing under this Note become due by acceleration or otherwise, all sums owing, including outstanding interest and any fee, expense or other amount payable under this Note, the Mortgage or any other Loan Documents (as defined in the Mortgage), will bear interest until paid in full at a rate equal to ten percent (10.00%) per annum in excess of the rate of interest specified above ("Default Rate"). All interest accrued at the Default Rate shall be immediately due and payable.

3. Repayment Terms and Maturity Date. Payments shall be interest only with a balloon payment of all outstanding principal and interest due on the Maturity Date. Payments of interest in the amount of $17,097.00 shall be due and payable on the first day of each month, commencing on the first day of September, 2006, and continuing on the first day of each month until the final payment of this Note, due on August 1, 2007 ("Maturity Date"). In the event any payment is not made when due, a late charge in the amount of ten percent (10%) of the late payment will be assessed. The final payment shall be in an amount equal to the entire outstanding principal balance of this Note, together with all accrued and unpaid interest and all other amounts remaining outstanding under the Loan Documents.

4. Allocation of Payments. All payments on this Note will be applied first to the payment of any costs, fees, late charges, or other charges incurred in connection with the indebtedness evidenced by this Note; next,

to the payment of accrued interest then to the reduction of the principal balance; or in any other order that Lender reasonably requires.

5. <u>Acceleration</u>. If Borrower fails to pay when due any sums payable under this Note, or an Event of Default (as defined in the Mortgage) occurs or any other event or condition occurs that, under the terms of the Mortgage or any other Loan Document, gives rise to a right of acceleration of sums owing under this Note, then Lender, at its sole option, will have the right to declare all sums owing under the Note immediately due.

6. <u>Prepayment</u>. In the event of prepayment of principal in the first six (6) months from the interest accrual date, a prepayment penalty will apply. The penalty will be six (6) months interest upon 100% of the prepayment amount, less any interest already paid upon said prepaid amount from the interest accrual date.

7. <u>No Offset</u>. Borrower will pay to Lender all sums owing under this Note without deduction, offset, or counterclaim of any kind. The relationship of Borrower and Lender under this Note is solely that of borrower and lender, and the loan evidenced by this Note and secured by the Mortgage will in no manner make Lender the partner or joint venturer of Borrower. Borrower acknowledges that there is no fiduciary relationship between Borrower and Lender.

8. <u>No Assignment or Assumption</u>. This Note may not be assumed. Any attempt to assign or assume Borrower's rights and/or obligations of this Note or of any of the Loan Documents shall constitute a material default of this Note and each of the Loan Documents, entitling Lender to exercise any and all remedies available to it, including, but not limited to, acceleration of all sums owed under the Note and foreclosure under the Mortgage.

9. <u>No Transfers or Encumbrances</u>. This Promissory Note is the Note referred to in, and is entitled to the benefits of, the Mortgage and the Other Security Documents. Among the provisions of the Mortgage is the following paragraph 12:

"12. <u>Encumbrance or Transfer of the Mortgage Property</u>.
(a) Encumbrance. Except for the liens securing the Indebtedness, Mortgagor will not create or permit to continue in existence any mortgage, pledge, encumbrance, lien, or charge of any kind (including purchase money and conditional sale liens) on any of the Property except for:
(i) liens for taxes not yet delinquent, and
(ii) any other liens or charges that are specifically approved in writing by Mortgagee/Beneficiary prior to the recordation of this Mortgage.
Any transaction in violation of this section will cause all Indebtedness, irrespective of the maturity dates, at the option of the holder and without demand or notice, to immediately become due, together with any prepayment premium in accordance with the terms of the Note.
(b) Transfer. Mortgagor acknowledges that Mortgagee/Beneficiary has examined both the creditworthiness of Trustor Mortgagor and Trustor's Mortgagor's experience in owning and operating properties such as the Trust Mortgage Property in determining whether or not to make the Loan, that Mortgagee/Beneficiary has relied on Trustor's Mortgagor's creditworthiness and experience in deciding to make the Loan, and that Mortgagee/Beneficiary will continue to rely on Trustor's Mortgagor's ownership of the Trust Mortgage Property as a means of maintaining the value of the Trust Mortgage Property as security for repayment of the Debt. Trustor Mortgagor acknowledges that Mortgagee/Beneficiary has a valid interest in maintaining the value of the Trust Mortgage Property so as to ensure that, if Trustor Mortgagor defaults in the repayment of the Debt, Mortgagee/Beneficiary can recover the Debt by a sale of the Trust Mortgage Property. If Trustor shall, without the prior written consent of Beneficiary, further encumber the Trust Property with any lien imposed in connection with any other financing, or sell, transfer or convey any part of the Trust Property or the right to manage or control the operation of any part of the Trust Property, the entire Debt shall become due, at the option of Beneficiary. A sale, transfer or conveyance within the meaning of this paragraph shall be deemed to

2

3/22/06

include:

(i) a. nstallment sales agreement in which M .gagor agrees to sell any part of the Mortgage Property for a price to be paid in installments;

(ii) an agreement by Mortgagor leasing all or a substantial part of the Mortgage Property (except as provided in paragraph 21(d)), or a sale, pledge, assignment or other transfer of, or the grant of a security interest in, Mortgagor's right, title and interest in any Leases or any Rents;

(iii) if Mortgagor is a corporation or a limited partnership with a corporate general partner, the transfer of stock of the Mortgagor or its corporate general partner to parties who do not now hold a controlling interest;

(iv) if Mortgagor is a general or limited partnership, joint venture, or other form of partnership (a "Partnership"), a transfer of any general partnership interest or the admission of any new general partner; and

(v) if Mortgagor is a limited liability company or a limited partnership with a limited liability company as general partner, the transfer of membership interests in the Mortgagor or its limited liability company general partner (or the stock or membership interests in any corporation or limited liability company controlling Mortgagor or its limited liability company general partner) or the creation or issuance of new memberships in Mortgagor
or its limited liability company general partner to parties so as to reduce the ownership interest of any manager to less than 51% or so as to change the control of the current manager over the company or partnership.

Mortgagee/Beneficiary reserves the right to condition its consent upon a modification of the terms of this Mortgage and the Note and on assumption of this Mortgage as so modified, by the proposed transferee, payment of a transfer or assumption fee, or such other conditions as Mortgagee/Beneficiary shall determine in its sole discretion to be in the interest of Mortgagee/Beneficiary. Mortgagee/Beneficiary shall not be required to demonstrate any actual impairment of its security or any increased risk of default in order to declare the Debt immediately due and payable upon Mortgagor's sale, transfer, conveyance or further encumbrance of the Mortgage Property without Mortgagee/Beneficiary's consent. This provision shall apply to every sale, transfer, conveyance, or further encumbrance of the Mortgage Property regardless of whether voluntary or not or whether or not Mortgagee/Beneficiary has consented to any previous sale, transfer, conveyance, or further encumbrance of the Mortgage Property."

10. _Remedies Cumulative._ Acceptance by Lender of any payment for less than what is due shall be deemed an acceptance on account only, and the failure to pay the entire amount then due shall be and continue to be an Event of Default. The rights or remedies of the Lender, as provided in this Note, the Mortgage or any of the Other Security Documents, or as provided at law or in equity shall be cumulative and concurrent, and may be pursued singly, jointly or successively against the Mortgage Property, Leases, Rents (as defined in the Mortgage) or any other funds, property or security held by Lender for the payment or performance thereof, or against the Borrower, any Guarantor or otherwise, at the sole discretion of the Lender.

11. _No Waivers or Modifications._ This Note shall not be amended, modified or changed, nor shall any waiver of any of its provisions be effective unless accomplished by an instrument in writing signed by the Mortgagor and Mortgagee/Beneficiary. No waiver or failure or delay by Lender in acting with respect to the terms of this Note, the Mortgage, or the other Loan Documents will constitute a waiver of any other breach, default, or failure of condition under this Note, the Mortgage, or the other Loan Documents.

12. _Collection Costs and Attorneys Fees._ Borrower and all endorsers, guarantors, sureties, accommodation parties hereof and all other persons liable or to become liable for all or any part of this indebtedness agree to pay all costs of collection, including reasonable attorneys' fees. If any attorney is engaged by Lender to enforce or construe any provision of this Note, the Mortgage, or the other Loan Documents or as a consequence of any Event of Default, with or without the filing of any legal action or

proceeding, then Borrower will immediately pay to Lender on demand all attorney fees and other costs incurred by Lender, including reasonable fe_ attributable to in-house counsel, toget._ with interest from the date of the demand until paid at the Default Rate.

13. <u>Usury Savings Clause</u>. Borrower acknowledges that the Loan was made by a licensed California Finance Lender or licensed California Real Estate Broker or it was arranged by a licensed California Real Estate Broker and that the broker's participation was a material factor in the consummation of this transaction. Notwithstanding anything herein or in any related Loan Document to the contrary, it is not the intention of the parties to charge or pay, nor shall there at any time be charged or paid, any interest (whether fixed, variable or otherwise) that would result in a rate of interest being paid in excess of the maximum rate permitted to be charged by law ("Maximum Rate"). In the event that any sum in excess of the maximum legal rate of interest is paid, that amount shall, immediately upon discovery thereof, be deemed to have been a prepayment of principal (which prepayment shall be permitted without premium or penalty) as of the date of such receipt, and all payments made thereafter shall be appropriately reapplied to interest and principal to give effect to the maximum interest rate permitted by law. After such reapplication, any excess payment shall be immediately refunded to Borrower.

14. <u>Miscellaneous</u>. Whenever used herein, the words "Borrower" and "Lender" shall be deemed to include their respective successors and Lender's assigns. If this Note is executed by more than one person or entity as Borrower, the obligations of each person or entity will be joint and several. No person or entity will be a mere accommodation maker, but each will be primarily and directly liable. Borrower waives presentment; demand; notice of dishonor; notice of default or delinquency; notice of acceleration; notice of protest and nonpayment; notice of costs, expenses, or losses and interest; notice of interest on interest and late charges; and diligence in taking any action to collect any sums owing under this Note or in proceeding against any of the rights or interests to properties securing payment of this Note. All endorsers, guarantors, sureties, and accommodation parties hereby consent to any and all renewals, extensions or modifications of the terms hereof, including time for payment. Any such renewals, extensions or modifications may be made without notice to any of said parties. Time is of the essence of this Note.

15. <u>Notices</u>. Any notice required or permitted to be given under this Agreement shall be given in the manner set forth in the Mortgage.

16. <u>Governing Law</u>. This Note is to be governed by and construed in accordance with the laws of the State of Michigan. Borrower consents to the jurisdiction of the state and federal courts in the State of Michigan for any actions involving the enforcement or interpretation of this Note, Mortgage and the transaction they evidence.

17. <u>Severability</u>. Whenever possible, each provision of this Note shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Note shall be prohibited by or invalid under applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remaining provisions of this Note.

18. <u>Dispute Resolution</u>. Any and all disputes arising out of or relating to this Agreement or any of the Loan Documents shall be resolved by binding arbitration between the parties pursuant to the Dispute Resolution provisions contained in the Mortgage.

BY AGREEING TO THIS BINDING ARBITRATION PROVISION, BOTH LENDER AND BORROWER GIVE UP ALL RIGHTS TO TRIAL BY JURY.

19. <u>Entire Agreement</u>. This Note and the other Loan Documents set forth the entire understanding between Borrower and Lender and they will not be amended except by a written instrument duly executed by each of Borrower and Lender. Any previous representations, warranties, agreements, and understandings among

4

3/22/06

the parties regarding the subject matter of the Loan or the Loan Documents, whether written or oral, are superseded by this Note and the other Loan Documents.

**[THIS NOTE CONTAINS PROVISIONS WHICH WILL REQUIRE A BALLOON PAYMENT AT MATURITY.]**

IN WITNESS WHEREOF, the undersigned has executed and delivered this Note effective as of the date first above written.

Grove Park Homes L.L.C., a Michigan Limited Liability Company

By: _____
    Ronald P. Lloyd, Managing Member

By: _____
    Glenda L. Ault, Managing Member



OFFIC' SEAL    Washtenaw Co., M:
**07/31/06** Lawrence Kestenbaum
L-4572 P-673   Clerk Register

**RECORDING REQUESTED BY:**
**Title One Company**

Page: 1 of 23
10:35 A
07/31/06
ACS-5739123-M-2006-23
Lawrence Kestenbaum, Washtenaw    L-4572  P-673

**AND WHEN RECORDED MAIL TO:**
Point Center Financial, Inc.
Attn: Loan Servicing
30900 Rancho Viejo Road, Ste 100
San Juan Capistrano, CA 92675

Title Order No: #4-62385
A.P.N.: See Exhibit "A" attached
Loan No.: 206074      MORTGAGE

*(Above Space For Recorder's Use Only)*

MORTGAGE, SECURITY AGREEMENT, ASSIGNMENT OF LEASES AND RENTS AND FIXTURE FILING

THIS DOCUMENT CONSTITUTES A FIXTURE FILING IN ACCORDANCE WITH SECTION 9402 OF THE MICHIGAN UNIFORM COMMERCIAL CODE (THE **Michigan Uniform Commercial Code**")

THIS MORTGAGE, SECURITY AGREEMENT, ASSIGNMENT OF LEASES AND RENTS AND FIXTURE FILING ("**Mortgage**"), made effective as of **July 19, 2006** by **Grove Park Homes L.L.C., a Michigan Limited Liability Company** ("**Mortgagor**"), whose address for purposes of this Mortgage is **3062 Chandler Avenue, Lincoln Park, Michigan 48196** (the State of Michigan is hereinafter sometimes referred to as the "**State**"); TO AND IN FAVOR OF **National Financial Lending, Inc., a California corporation** ("**Trustee**"); Point Center Financial, Inc., a California corporation ( the "Mortgagee/**Beneficiary**"), whose address is c/o Point Center Financial, Inc., 30900 Rancho Viejo Road, Suite 100, San Juan Capistrano, CA 92675.

W I T N E S S E T H :

To secure the payment of a debt described below (the "Debt"), Mortgagor hereby mortgages (WITH POWER OF SALE), grants, bargains, conveys, transfers, and assigns to Mortgagee/Beneficiary, to be held in trust by Trustee for the benefit of Mortgagee/Beneficiary, all of the real property described in **Exhibit "A"** attached hereto (the "**Premises**") and the buildings, structures, additions, enlargements, lot line adjustment additions, extensions, modifications, repairs and improvements now or hereafter located thereon (the "**Improvements**");

TOGETHER WITH: All right, title, interest and estate of Mortgagor now owned or hereafter acquired in the following property, rights, interests, and estates (collectively called the "**Mortgage Property**"):

(a) All easements, rights-of-way, strips of land, streets, alleys, passages, sewer rights, mineral rights, water rights and powers, and all estates, rights, titles, interests, privileges, tenements, hereditaments and appurtenances of any nature, in any way belonging, relating or pertaining to the Premises and the reversion and reversions, remainder and remainders, and all land laying in the bed of any street, road or avenue, opened or proposed, in front of or adjoining the Premises to the center line thereof and all the estates, rights, titles, interests, dower and rights of dower, property, possession, claim and demand, both in law and in equity, of Mortgagor in the Premises and every part thereof and all appurtenances thereto;

Page: 2 of 23
10:35 A
07/31/06
ACS-5739123-M-2006-23
Lawrence Kestenbaum, Washtenaw
L-4572  P-673

(b) All machinery, furniture, equipment, fixtures, material, appliances and other articles of personal property of every kind owned by Mortgagor, or in which Mortgagor has an interest, located upon the Premises, and appurtenances thereto, and usable for the generation and distribution of air, water, heat, electricity, light, fuel or refrigeration, or for ventilating or air conditioning purposes, or for sanitary or drainage purposes, or for the exclusion of vermin or insects, or for removal of dust, refuse or garbage, and such machinery, furniture, equipment, fixtures and other articles of personal property which consist of all appliances, awnings, window shades, drapery rods, brackets, screens, floor coverings, incinerators and carpeting used in the operation of the Premises and Improvements (and all other personal property, either similar or dissimilar to the foregoing usable in the operation of the Premises and Improvements and located in and on it), together with all replacements and substitutions therefor, now owned or hereafter acquired by Mortgagor and located in or on said Premises and Improvements, together with all materials intended for construction, reconstruction, alteration, and repair of the Improvements (hereinafter collectively called the **"Equipment"**), together with all condemnation awards and rights under insurance policies and Leases described below pertaining to said Premises or the Improvements now or hereafter located thereon;

(c) All awards or payments, including interest, which may be made as to the Mortgage Property, whether from the exercise of the right of eminent domain, constructive taking or for any other injury to or decrease in the value of the Mortgage Property (collectively, **"Awards"**);

(d) All leases and other agreements affecting the use, enjoyment or occupancy of the Mortgage Property, (the **"Leases"**), if any, and all rents and security deposits payable under the Leases, and other deposits, issues and profits from the Mortgage Property (the **"Rents"**);

(e) All Policies (as defined herein) and their proceeds thereof and any unearned premiums on any insurance policies covering the Mortgage Property, including, the right to receive and apply the proceeds of any insurance, judgments, or settlements made in lieu thereof, for damage to the Mortgage Property, whether such insurance is or is not required by this Mortgage;

(f)      All utility deposits made to obtain or maintain utility services to the Premises or the Improvements;

(g)      Any amounts in any escrow fund for the purposes of payment of taxes, insurance premiums or other Impositions (as defined in Paragraph 4 herein) as to the Mortgage Property;

(h)      The right, in the name and on behalf of Mortgagor, to appear in and defend any action or proceeding brought as to the Mortgage Property and to commence any action or proceeding to protect the interest of Trustee and/or Beneficiary in the Mortgage Property;

(i)      All building materials and supplies now or hereafter located upon the Mortgage Property and all architectural renderings, drawings, specifications now or hereafter relating to the Mortgage Property;

(j)      All contracts and agreements now or hereafter existing relating to the design, construction or improvement of the Mortgage Property;

(k)      All deposits given to utilities and governmental authorities pertaining to the Property;

(l)      All present and future governmental, utility and homeowner association approvals, permits and entitlements pertaining to the Mortgage Property; and

(m)     The products and proceeds of the property described in the above (a) through (l) inclusive.

**TO HAVE AND TO HOLD** the Mortgage Property upon and subject to the trusts and agreements set forth in this Mortgage.

1.      Secured Indebtedness. This Mortgage is given to secure the payment and performance of the following obligations, indebtedness, and liabilities (the "**Obligations**"): (a) all Obligations of Mortgagor under the Promissory Note of this date payable to Mortgagee/Beneficiary, in the principal amount of **One Million Seven Hundred Nine Thousand Seven Hundred and No/100 Dollars ($1,709,700.00)**, as well as any other substituted note and all modifications, renewals, or extension of the note, including, but not limited to, the Addendum to Promissory Note, dated July 19, 2006, executed concurrent with the Promissory Note ("Addendum") (the "**Note,**" and the payee and all subsequent holders of the Note are collectively the "**Mortgagee/Beneficiary**" and the transaction creating the Note is the "**Loan**"); (b) all Obligations under this Mortgage as it may be amended from time to time, (c) all present and future loans, advances, or other extensions of credit obtained by Mortgagor from Mortgagee/Beneficiary, and all promissory notes evidencing such present or future loans, advances, or other extensions of credit, including Mortgagor's Obligations under any present or future loan or credit agreement executed by Mortgagor, including the Assignment of Lessor's Interest in Leases and Rents of the same date (the "**Assignment**"), including any other agreement granting additional security interests (collectively, "**Other Security Documents**"), and all liabilities that Mortgagor may now or in the future owe to Mortgagee/Beneficiary. Collectively the Obligations referred to above are called the "**Debt.**"

Notwithstanding any provision of this Mortgage to the contrary, in no event shall this Mortgage secure the Obligations of Mortgagor or any Guarantor arising exclusively under (i) any guaranty of the same date (the "**Guaranty**") or (ii) any Environmental Certificate and Indemnity Agreement of the same date, given by Mortgagor or any other person to Mortgagee/Beneficiary (the "**Environmental Indemnity**"). The definition of "Other Security Documents" shall not include the Guaranty or the Environmental Indemnity.

2.      Representations, Warranties and Covenants.

(a)     Warranty of Title. Mortgagor warrants that Mortgagor has good title to the Mortgage Property and has the unrestricted right to grant the security interests given in this Mortgage and that Mortgagor presently possesses an unencumbered fee simple estate in the Premises and the Improvements except for those shown in the title report for this transaction (the "**Permitted Encumbrances**"), and that this Mortgage is and will remain a valid and enforceable lien on and security interest in the Mortgage Property, subject only to the Permitted Encumbrances. Mortgagor shall forever warrant, defend and preserve such title and the validity and priority of the lien of this Mortgage, subject to the Permitted Encumbrances, and shall forever warrant and defend the same to Mortgagee/Beneficiary against the claims of all persons.

(b)     Representations and Covenants Concerning Loan. Mortgagor represents, warrants and covenants as follows:

(i)     All certifications, permits, licenses and approvals, including certificates of completion and occupancy permits required for the legal use, occupancy and operation of the Mortgage Property as currently operated (collectively, the "**Licenses**"), have or will be obtained and maintained in good standing (including, without limitation, any applicable liquor license). The Mortgagor shall keep and maintain all Licenses. The Mortgage Property is free of material damage and is in good repair, and there is no proceeding pending for the total or partial condemnation of, or affecting, the Mortgage Property.

(ii)      All of the Improvements which were included in determining the appraised value of the Mortgage Property lie wholly within the boundaries and building restriction lines of the Mortgage Property, and no improvements on adjoining properties encroach upon the Mortgage Property, and no easements or other encumbrances upon the Premises encroach upon any of the Improvements, so as to affect the value or marketability of the Mortgage Property except those which are insured against by the Mortgagee/Beneficiary's policy of mortgagee's title insurance insuring the lien of this Mortgage. All of the Improvements comply with all material requirements of any applicable zoning and subdivision laws and ordinances.

(iii)     The Mortgage Property is not subject to any Leases other than the Leases described in the rent roll delivered to Mortgagee/Beneficiary in connection with this Mortgage. No person has any possessory interest in the Mortgage Property or right to occupy the same except under and pursuant to the provisions of the Leases. The current Leases are good standing.

(iv)     The Mortgage Property is and shall at all times remain in compliance with all statutes, ordinances, regulations and other governmental or quasi-governmental requirements and private covenants now or in the future relating to the ownership, construction, use or operation of the Mortgage Property.

(v)      There has not been committed by Mortgagor or, to Mortgagor's knowledge, any other person in occupancy of or involved with the operation or use of the Mortgage Property any act or omission affording the federal government or any state or local government the right of forfeiture as against the Mortgage Property or any part thereof or any monies paid in performance of Mortgagor's obligations under this Mortgage or any of the Other Security Documents. Mortgagor hereby covenants and agrees not to commit, permit or suffer to exist any act or omission affording such right of forfeiture.

(vi)     Neither the execution nor delivery of the Note, this Mortgage, or the Other Security Documents, nor the Mortgagor's performance thereunder, nor the recordation of this Mortgage, nor the exercise of any remedies by Mortgagee/Beneficiary, will adversely affect Mortgagor's rights under any of the Licenses.

(c) Survival. The warranties of this Paragraph will survive foreclosure or enforcement of this Mortgage and shall run with the Premises.

3.  Insurance.

(a) Risks to be Insured and Policy Provisions. Subject to the provisions of Paragraph 5 hereof, Mortgagor, at its sole cost and expense, will maintain or cause to be maintained the following:

(i)      Commercial general liability (including contractual liability) insurance (**"CGL Insurance"**) covering any and all liability of the insured arising out of the ownership, maintenance, use or occupancy of the Mortgage Property, and all operations incidental thereto said insurance to have limits of not less than **Two Million Dollars ($2,000,000.00)** combined single limit per occurrence for bodily injury, personal injury and property damage liability;

(ii)     Insurance (**"Building Insurance"**) on all buildings, fixtures and improvements located on the Mortgage Property against "special perils" (including "ordinance or law coverage"), in amounts at least equal to the greater of: (x) the full replacement cost thereof (without deduction for depreciation) as such replacement cost shall be determined from time to time at the reasonable request of Mortgagee/Beneficiary; or (y) unless prohibited by law, the unpaid principal amount of the Debt. The Building Insurance shall include a co-insurance waiver or agreed amount endorsement. Such insurance shall, during the course of any construction of additions to the Improvements, be on

Page: 5 of 23
10:35 A
07/31/06
ACS-5739123-M-2006-23
Lawrence Kestenbaum, Washtenaw
L- 4572   P- 673

Special Form Builder's Risk 100% Completed Value Non-Reporting Form or other form approved by Mortgagee/Beneficiary;

(iii)   Insurance on personal property against fire and any peril generally included within the classification of "extended coverage" (**"Personal Property Insurance"**) in amounts at least equal to the replacement value thereof;

(iv)   Rental value or business interruption insurance (or a combination thereof as Mortgagee/Beneficiary may require) (**"Rental Value or Business Interruption Insurance"**) on all buildings, fixtures, improvements, and other constructions located on and forming a part of the Mortgage Property as above described (including parking and common areas) against loss by the perils covered by the Building Insurance in amounts of not less than the amount of Mortgagor's annual gross income from the Mortgage Property or Mortgagor's debt service on the Mortgage Property (including required payments to the Escrow Fund), for twelve (12) months, whichever is greater. Such Rental Value or Business Interruption Insurance shall contain an endorsement extending the period of indemnity for not less than ninety (90) days after restoration of said buildings, fixtures and improvements is completed;

(v)   If and whenever Mortgagor shall have employees, workers' compensation insurance as required by law and employer's liability insurance with limits of liability of not less than Two Million Dollars ($2,000,000.00) combined single limit per occurrence for bodily injury, personal injury and property damage liability;

(vi)   If the Mortgage Property is located in an area which has been identified by the Secretary of Housing and Urban Development as a flood hazard area and in which flood insurance has been made available under the National Flood Insurance Act of 1968 (the "**Act**"), Mortgagor shall keep the Mortgage Property covered by flood insurance ("**Flood Insurance**") up to the maximum limit of coverage available under the Act, but not in excess of the amount of the Debt; and

(vii)   Such other insurance with respect to the Mortgage Property in such amounts and against such insurable hazards as Mortgagee/Beneficiary from time to time may reasonably require (**"Additionally Required Insurance"**).

All insurance required hereunder, including the CGL Insurance (the **"Policies"**), shall provide that coverage shall not be revised, cancelled or reduced until at least thirty (30) days' written notice of such revision, cancellation or reduction shall have been given to Mortgagee/Beneficiary; be issued by insurance companies which are qualified to do business in the State, which have at least one of the following A.M. Best Co. combinations of Best's Rating and Best Financial Size Category: A-, XV; A, XIII; A+, IX; or A++, VIII; and which are satisfactory to Mortgagee/Beneficiary in all other ways.

The CGL Insurance shall name Mortgagee/Beneficiary as an additional insured; apply severally as to Mortgagor and Mortgagee/Beneficiary (excepting the limits of liability); cover each of them as insureds in the same manner as if separate policies had been issued to each of them (excepting the limits of liability); contain no provisions affecting any rights which any of them would have as claimants if not so named as insureds; and be primary insurance with any other valid and collectible insurance available to Mortgagee/Beneficiary constituting excess insurance.

The Building Insurance, Personal Property Insurance, Rental Value or Business Interruption Insurance, and Flood Insurance shall name Mortgagee/Beneficiary as an additional insured; and have attached to them a Lender's Loss Payable Endorsement naming Mortgagee/Beneficiary as Lender, a standard waiver of subrogation endorsement, a stipulated amount endorsement, and a full replacement cost endorsement.

(b)  Delivery of Policy.  Mortgagor will deliver to Mortgagee/Beneficiary original binders or evidence of all

required insurance to Mortgagee/Beneficiary and Mortgagor shall promptly furnish to Mortgagee/Beneficiary copies of all renewal notices and all receipts of paid premiums received by it. At least ten (10) days prior to the expiration date of a required policy, Mortgagor shall deliver to Mortgagee/Beneficiary a renewal binder or evidence of insurance in a form satisfactory to Mortgagee/Beneficiary.

(c) Assignment of Policy. If the Mortgage Property is sold at a foreclosure sale or if Mortgagee/Beneficiary shall acquire title to the Mortgage Property, Mortgagee/Beneficiary shall have all of the rights of Mortgagor to the Policies and the unearned premiums on them and to the proceeds resulting from any damage to Mortgage Property prior to such sale or acquisition.

(d) Notice of Damage or Destruction; Adjusting Loss. If any part of the Mortgage Property is damaged or destroyed by fire or other casualty, Mortgagor will promptly give written notice thereof to the insurance carrier and Mortgagee/Beneficiary, and will not adjust any damage or loss which exceeds $10,000 unless Mortgagee/Beneficiary joins in such adjustment; but if there has been no adjustment of any such damage or loss within four months from the date of occurrence and if an Event of Default exists at the end of such four-month period or at any time thereafter, Mortgagee/Beneficiary may alone make proof of loss, adjust and compromise any claim under the policies and appear in and prosecute any action arising from such policies. In connection therewith, Mortgagor does hereby irrevocably authorize, empower and appoint Mortgagee/Beneficiary as attorney-in-fact for Mortgagor (which appointment is coupled with an interest) to do any of the above in the name of Mortgagor.

(e) Application of Insurance Proceeds. All sums in excess of $10,000 paid under any insurance policies relating to the Building Insurance, Personal Property Insurance, Rental Value or Business Interruption Insurance, Flood Insurance or Additionally Required Insurance (collectively the "**Proceeds**"), shall be paid to Mortgagee/Beneficiary which may, at its option (but subject to the provisions of this Paragraph), apply them, after first deducting Mortgagee/Beneficiary's expenses incurred in the collection thereof, to the payment of the Debt, whether or not due and in such order of application as Mortgagee/Beneficiary may determine, or to the repair, replacement, rebuilding or restoration of the Mortgage Property, in such manner as Mortgagee/Beneficiary may determine. However, Mortgagee/Beneficiary shall make all Proceeds (after first deducting therefrom Mortgagee/Beneficiary's reasonable expenses incurred in collecting them) available to Mortgagor to reimburse Mortgagor for Mortgagor's reasonable costs of restoration, repair, replacement or rebuilding of the Improvements and Equipment, in accordance with procedures reasonably required by Mortgagee/Beneficiary (and shall not be applied toward the payment of the Debt until after restoration and repair of the Improvements and Equipment) provided:

(i)     There is no Event of Default;

(ii)    Mortgagor has notified Mortgagee/Beneficiary of Mortgagor's intention to perform such restoration or repair within thirty (30) days after adjusting the loss or casualty;

(iii)   Mortgagee/Beneficiary receives reasonably satisfactory evidence that the Premises and Equipment have been fully restored or that by application of the Proceeds will be fully restored to their condition prior to the damage or destruction, free and clear of all liens other than the Permitted Encumbrances;

(iv)    If, in the reasonable judgment of Mortgagee/Beneficiary, the Proceeds will be insufficient to restore the Improvements and Equipment to their condition prior to the damage or destruction, Mortgagor shall demonstrate to Mortgagee/Beneficiary the availability of funds which, together with the Proceeds, are sufficient to restore the Improvements and Equipment to their condition prior to the damage or destruction; and



Page: 7 of 23
10:35 A
07/31/06
ACS-5739123-M-2006-23
Lawrence Kestenbaum, Washtenaw
L-4572  P-673

(v)    There will, in the reasonable judgment of Mortgagee/Beneficiary, remain sufficient time to complete the restoration or repair of the Improvements and Equipment prior to the Date of Maturity (as defined in the Note).

Any Proceeds remaining after reimbursement of Mortgagor for its costs of restoring the Improvements and Equipment, at Mortgagee/Beneficiary's option, may be applied to partial prepayment of the Debt. Any such application of the Proceeds to the payment of the Debt shall be without prepayment premium or penalty, if any, otherwise applicable and shall not extend or postpone the due dates of the monthly installments under the Note or change the amount of such installments. Any remaining proceeds not applied to the Debt shall be paid to Mortgagor.

4.    Payment of Impositions.  Subject to the payments in the manner provided in Paragraph 5 hereof and to Paragraph 8 relating to contests, Mortgagor shall pay when due all taxes (both real and personal), assessments, water charges, sewer charges, ground rents, maintenance charges and all other charges, including, without limitation, vault charges and license fees for the use of vaults, chutes and similar areas adjoining the Premises, now or hereafter levied or assessed or imposed against the Mortgage Property (the "**Impositions**"). Mortgagor will deliver to Mortgagee/Beneficiary, upon request, evidence satisfactory to Mortgagee/Beneficiary that the Impositions are not delinquent. Mortgagor shall not permit and shall promptly cause to be discharged any lien or charge which becomes a lien or charge against the Mortgage Property, and shall promptly pay for all utility services provided to the Mortgage Property.

5.    Escrow Fund.  At the option of the Mortgagee/Beneficiary, Mortgagee/Beneficiary may require Mortgagor to establish an Escrow Fund (defined below) sufficient to pay all Impositions and all insurance premiums for all Policies (the "**Insurance Premiums**") pursuant to this Mortgage. Initial deposits of Impositions and Insurance Premiums shall be made by Mortgagor to Mortgagee/Beneficiary in amounts determined by Mortgagee/Beneficiary in its discretion on the date hereof to be held by Mortgagee/Beneficiary or its agent, in escrow.  Additionally, Mortgagor shall pay to Mortgagee/Beneficiary on the first day of each calendar month one-twelfth of an amount which would be sufficient to pay the Impositions and Insurance Premiums upon the due dates for them (the initial deposits and the amounts referred to in the previous sentence shall be called the "**Escrow Fund**").  Mortgagor agrees to notify Mortgagee/Beneficiary immediately of any changes to the amounts, schedules and instructions for payment of any Impositions and Insurance Premiums and authorizes Mortgagee/Beneficiary or its agent to obtain the bills for Impositions directly from the appropriate tax or insurance authority. The Escrow Fund and the payments of interest or principal or both under the Note shall be added and paid together.  Provided there are sufficient amounts in the Escrow Fund and no Event of Default exists, Mortgagee/Beneficiary shall pay the Impositions and Insurance Premiums when due with funds from the Escrow Fund.  If the Escrow Fund is insufficient to pay the items set forth above, Mortgagor shall pay, upon demand, to Mortgagee/Beneficiary, any shortage. Unless otherwise required by applicable law, no earnings or interest on the Escrow Fund shall be payable to Mortgagor.

6.    Liens.  Subject to Paragraph 8 hereof relating to contests, the Mortgagor shall not create or permit any lien, encumbrance or charge on the Mortgage Property inferior to the lien of this Mortgage.  Mortgagor shall pay, when due, the claims of: (i) all persons supplying labor or materials to or in connection with the Mortgage Property; and (ii) registered or certified surveyors or engineers, or licensed architects, or their professional consultants supplying professional services in connection with the Mortgage Property.

7.    Compliance with Laws.  Subject to Paragraph 8 relating to contests, Mortgagor shall comply with all present and future statutes, laws, rules, orders, regulations and ordinances affecting the Mortgage Property, any part thereof or the use thereof and shall comply with all covenants, conditions and restrictions applicable to the Mortgagor which are contained in any documents constituting a Permitted Encumbrance.

Page: 8 of 23
10:35 A
07/31/06
ACS-5739123-M-2006-23
Lawrence Kestenbaum, Washtenaw
L-4572    P-673

8. <u>Permitted Contests</u>. The Mortgagor shall not be required to (i) pay any tax, assessment or other charge referred to in <u>paragraph 4</u>, (ii) discharge or remove any lien, encumbrance or charge referred to in <u>Paragraph 6</u>, or (iii) comply with any statute, law, rule, regulation or ordinance referred to in <u>Paragraph 7</u>, if Mortgagor (a) contests, in good faith, the existence, the amount or the validity of the item, and (b) shall give such security to Mortgagee/Beneficiary as may be reasonably demanded by Mortgagee/Beneficiary to ensure compliance with the foregoing provisions of this Paragraph. Mortgagor shall give prompt written notice to Mortgagee/Beneficiary of the commencement of any contest referred to in this Paragraph.

9. <u>Condemnation</u>.

(a) Immediately upon receipt by Mortgagor of notice of the institution of any proceeding or negotiations for condemnation or other eminent domain proceeding (called **"Taking")**, Mortgagor shall give notice thereof to Trustee and Mortgagee/Beneficiary. Trustee and Mortgagee/Beneficiary may appear in any such proceedings and participate in any such negotiations and may be represented by counsel.    Mortgagor, notwithstanding that Trustee and Mortgagee/Beneficiary may not be a party to any such proceeding, will promptly give to Trustee and Mortgagee/Beneficiary copies of all notices, pleadings, judgments, determinations and other papers received by Mortgagor therein. Mortgagor will not enter into any agreement permitting or consenting to the taking of the Mortgage Property, or any part thereof, or providing for the conveyance thereof in lieu of condemnation, unless Mortgagee/Beneficiary has first consented thereto in writing, which consent shall not be unreasonably withheld or delayed. All Taking awards shall be adjusted jointly by Mortgagor and Mortgagee/Beneficiary. All awards payable as a result of a Taking which exceed $10,000 shall be paid to Mortgagee/Beneficiary. Mortgagee/Beneficiary may, at its option, apply the proceeds, after first deducting its expenses incurred in the collection of them, to the payment of the Debt, whether or not due and in such order of application as Mortgagee/Beneficiary may determine, or to the repair, replacement, rebuilding or restoration of the Mortgage Property, in such manner as Mortgagee/Beneficiary may determine; <u>provided</u>, <u>however</u>, that any such application of any award payable as a result of a Taking, to the payment of the Debt, shall be without prepayment premium or penalty.

(b) All Awards that exceed $10,000 shall be paid to Mortgagee/Beneficiary. Mortgagee/Beneficiary shall make all Awards (after first deducting Mortgagee/Beneficiary's expenses to collecting the Award) available to Mortgagor to reimburse Mortgagor for its reasonable costs of restoration, repair, replacement or rebuilding of the Improvements; <u>subject, however</u> to conditions substantially similar to the conditions imposed under the terms of <u>Paragraph 3(e)</u> above, relating to the use of Proceeds. Any excess portion of any Award shall applied to partial prepayment of the Debt, without prepayment premium or penalty and shall not extend or postpone the due dates of monthly payments.

(c) MORTGAGOR HEREBY UNCONDITIONALLY AND IRREVOCABLY WAIVES ALL RIGHTS OF A PROPERTY OWNER UNDER SECTION MCLA 213.63 OR ANY SUCCESSOR STATUTE PROVIDING FOR THE ALLOCATION OF CONDEMNATION PROCEEDS BETWEEN A PROPERTY OWNER AND A LIEN HOLDER, TO THE EXTENT PERMITTED BY LAW.

10. <u>Leases and Rents</u>. Mortgagor agrees that Mortgagee/Beneficiary has the right to enter the Mortgage Property for the purpose of enforcing its interest in the Leases and the Rents. Further Mortgagor hereby assigns to Mortgagee/Beneficiary and Trustee all of its rights to collect and use Rents obtained from the leasing of the Premises and its interests therein.  Nevertheless, and notwithstanding the foregoing, subject to the terms of this Paragraph, Mortgagee/Beneficiary grants Mortgagor a limited license to collect the Rents. Mortgagor shall hold the Rents, or that portion thereof sufficient to discharge all current sums due and unpaid by Mortgagor under the terms of the Note, whichever is less, in trust for use in the payment of the Debt.

Upon the occurrence of an Event of Default, Mortgagor's limited license to collect Rents shall automatically

Page: 9 of 23
10:35 A
07/31/06
ACS-5739123-M-2006-23
Lawrence Kestenbaum, Washtenaw
L-4572 P-673

terminate, and any rents previously collected and in Mortgagor's possession shall thereafter be held in trust for payment of the Debt. Mortgagee/Beneficiary may enter upon the Mortgage Property, collect and retain the Rents and apply the Rents toward payment of the Debt in such priority and proportions as Mortgagee/Beneficiary in its discretion shall deem proper. All Major Tenant Leases (as defined below) entered into subsequent to the date hereof shall be approved, in writing, by Mortgagee/Beneficiary. Upon request, Mortgagor shall furnish Mortgagee/Beneficiary with executed copies of all Leases. In addition, all renewals of Leases and all proposed Leases shall provide for rental rates comparable to existing local market rates (taking into account reasonable free-rent periods or other promotional discounts consistent with local market conditions) and shall be arm's length transactions. All Leases shall provide that they are subordinate to this Mortgage, and that the lessee attorns to Mortgagee/Beneficiary, provided Mortgagee/Beneficiary and the lessee execute a customary subordination, non-disturbance and attornment agreement. Mortgagor shall not, without the consent of Mortgagee/Beneficiary, cancel any Major Tenant Lease or accept prepayments of installments of Rent under a Major Tenant Lease for a period of more than one (1) month in advance or further assign the whole or any part of the Leases or the Rents. Mortgagor shall perform each provision of every Lease. All security and other deposits received by Mortgagor under any Lease shall be maintained in a separate account at a bank, and shall not be commingled with Mortgagor's other funds. If an Event of Default occurs, Mortgagee/Beneficiary, at its option, may require Mortgagor to pay monthly in advance to Mortgagee/Beneficiary, or any receiver appointed to collect the Rents, the fair rental value for the portion of the Mortgage Property possessed by Mortgagor and may require Mortgagor to surrender possession of the Mortgage Property to Mortgagee/Beneficiary or to such receiver and, in default thereof, Mortgagor may be evicted by summary proceedings or otherwise. For purposes of this Paragraph, a **"Major Tenant Lease"** shall mean any Lease under which the tenant occupies at least 5,000 square feet of the Premises, or which is for a term of at least 10 years, or which otherwise represents at least 25% of the sum total of the Rent under all Leases of the Mortgage Property.

11. Preservation and Maintenance of Mortgage Property. Mortgagor (i) shall keep the Improvements now or hereafter erected on the Premises in safe and good repair and condition, ordinary depreciation excepted; (ii) shall, upon damage or destruction of the Mortgage Property or any part thereof by fire or other casualty, restore, repair, replace or rebuild the Mortgage Property that is damaged or destroyed to the condition it was in immediately prior to such damage or destruction, whether or not any insurance proceeds are available or sufficient for such purpose; provided, however, that if Mortgagee/Beneficiary shall apply all the insurance proceeds or any portion thereof to payment of the Debt, Mortgagor shall have the option, in lieu of completing such repair, replacement, rebuilding or restoration, to pay in full the Note and the entire Debt without payment of a premium or penalty; (iii) shall constantly maintain the parking and landscaped areas of the Mortgage Property; (iv) shall not commit waste or permit impairment or deterioration of the Mortgage Property; (v) shall not construct additions to existing buildings or additional buildings on the Premises without the prior written consent of the Mortgagee/Beneficiary, which consent shall not be unreasonably withheld or delayed; (vi) shall not remove from the Premises any of the fixtures and personal property included in the Mortgage Property unless the same is immediately replaced with property of at least equal value and utility, and this Mortgage becomes a valid first lien on such property; and (vii) shall maintain the roofs of the Improvements in safe, sound and good repair and condition.

12. Transfer or Encumbrances of the Mortgage Property.

(a) Encumbrance. Except for the liens securing the Indebtedness, Mortgagor will not create or permit to continue in existence any mortgage, pledge, encumbrance, lien, or charge of any kind (including purchase money and conditional sale liens) on any of the Property except for:

(i) liens for taxes not yet delinquent, and

(ii) any other liens or charges that are specifically approved in writing by Mortgagee/Beneficiary prior to the recordation of this Mortgage.

Page: 10 of 23
10:35 A
07/31/06
ACS-5739123-M-2006-23
Lawrence Kestenbaum, Washtenaw
L- 4572   P- 673

Any transaction in violation of this section will cause all Indebtedness, irrespective of the maturity dates, at the option of the holder and without demand or notice, to immediately become due, together with any prepayment premium in accordance with the terms of the Note.

(b) Transfer. Mortgagor acknowledges that Mortgagee/Beneficiary has examined both the creditworthiness of Trustor Mortgagor and Trustor's Mortgagor's experience in owning and operating properties such as the Trust Mortgage Property in determining whether or not to make the Loan, that Mortgagee/Beneficiary has relied on Trustor's Mortgagor's creditworthiness and experience in deciding to make the Loan, and that Mortgagee/Beneficiary will continue to rely on Trustor's Mortgagor's ownership of the Trust Mortgage Property as a means of maintaining the value of the Trust Mortgage Property as security for repayment of the Debt. Trustor Mortgagor acknowledges that Mortgagee/Beneficiary has a valid interest in maintaining the value of the Trust Mortgage Property so as to ensure that, if Trustor Mortgagor defaults in the repayment of the Debt, Mortgagee/Beneficiary can recover the Debt by a sale of the Trust Mortgage Property. If Trustor shall, without the prior written consent of Beneficiary, further encumber the Trust Property with any lien imposed in connection with any other financing, or sell, transfer or convey any part of the Trust Property or the right to manage or control the operation of any part of the Trust Property, the entire Debt shall become due, at the option of Beneficiary. A sale, transfer or conveyance within the meaning of this paragraph shall be deemed to include:

(i) an installment sales agreement in which Mortgagor agrees to sell any part of the Mortgage Property for a price to be paid in installments;

(ii) an agreement by Mortgagor leasing all or a substantial part of the Mortgage Property (except as provided in paragraph 21(d)), or a sale, pledge, assignment or other transfer of, or the grant of a security interest in, Mortgagor's right, title and interest in any Leases or any Rents;

(iii) if Mortgagor is a corporation or a limited partnership with a corporate general partner, the transfer of stock of the Mortgagor or its corporate general partner to parties who do not now hold a controlling interest;

(iv) if Mortgagor is a general or limited partnership, joint venture, or other form of partnership (a "Partnership"), a transfer of any general partnership interest or the admission of any new general partner; and

(v) if Mortgagor is a limited liability company or a limited partnership with a limited liability company as general partner, the transfer of membership interests in the Mortgagor or its limited liability company general partner (or the stock or membership interests in any corporation or limited liability company controlling Mortgagor or its limited liability company general partner) or the creation or issuance of new memberships in Mortgagor or its limited liability company general partner to parties so as to reduce the ownership interest of any manager to less than 51% or so as to change the control of the current manager over the company or partnership.

Mortgagee/Beneficiary reserves the right to condition its consent upon a modification of the terms of this Mortgage and the Note and on assumption of this Mortgage as so modified, by the proposed transferee, payment of a transfer or assumption fee, or such other conditions as Mortgagee/Beneficiary shall determine in its sole discretion to be in the interest of Mortgagee/Beneficiary. Mortgagee/Beneficiary shall not be required to demonstrate any actual impairment of its security or any increased risk of default in order to declare the Debt immediately due and payable upon Mortgagor's sale, transfer, conveyance or further encumbrance of the Mortgage Property without Mortgagee/Beneficiary's consent. This provision shall apply to every

Page: 11 of 23
10:35 A
07/31/06
ACS-5739123-M-2006-23
Lawrence Kestenbaum, Washtenaw
L- 4572   P- 673

sale, transfer, conveyance, or further encumbrance of the Mortgage Property regardless of whether voluntary or not or whether or not Mortgagee/Beneficiary has consented to any previous sale, transfer, conveyance, or further encumbrance of the Mortgage Property.

13.    Estoppel Certificates. After request by Mortgagee/Beneficiary, Mortgagor, within ten (10) days and at its expense, will furnish the Mortgagee/Beneficiary with a statement, duly certified, confirming or otherwise setting forth the original principal amount of the Note, the unpaid principal amount of the Note, the rate of interest on the unpaid principal amount of the Note, the dates installments of interest (or any principal) were last paid, the offsets or defenses to the payment of the Debt, if any, and that the Note and this Mortgage are valid, legal and binding obligations and have not been modified or, if modified, giving particulars on such modification.

14.    Notices. Any notice, demand, statement, request, or consent made under this Mortgage shall be in writing and shall be deemed given when hand delivered, or within three (3) days after the date sent by certified mail, return receipt requested, or the next business day after the date sent by nationally recognized overnight mail or courier service to the address, as set forth above, of the party to whom such notice is to be given, or to such other address as Mortgagor, Trustee or Mortgagee/Beneficiary, as the case may be, shall in like manner designate in writing.

Mortgagor hereby requests that, unless otherwise prescribed by law, a copy of any notice of default or notice of sale pursuant to the nonjudicial foreclosure of this Mortgage be mailed to Mortgagor at the mailing address set forth in the preamble above.

15.    Sale of Mortgage Property. If this Mortgage is foreclosed, the Mortgage Property, or any interest therein, may at the discretion of Mortgagee/Beneficiary be sold in one or more parcels or in several interests or portions and in any order or manner as may be permitted by applicable law.

16.    Right of Entry. Mortgagee/Beneficiary and its agents shall have the right to enter and inspect the Mortgage Property at all reasonable times upon notice to Mortgagor.

17.    Books and Records. Mortgagor shall keep adequate books and records of account and furnish Mortgagee/Beneficiary with financial statements prepared by a certified public accountant reasonably acceptable to Mortgagee/Beneficiary, and other information concerning the affairs of Mortgagor as Mortgagee/Beneficiary may reasonably request, in form and detail reasonably satisfactory to Mortgagee/Beneficiary, including, annual statements of income and expense related to the operation of the Mortgage Property (including a current rent roll, gross rental income, other income, real estate taxes, insurance, operating expenses and depreciation), a copy of Mortgagor's federal income tax return (including all supporting schedules) within 90 days after the end of each fiscal year, and from time to time, interim financial statements and other information as reasonably requested by Mortgagee/Beneficiary. All such financial statements, and other information shall be certified to be true and accurate by an individual responsible for the financial affairs of Mortgagor, in such individual's individual capacity. In the event that such financial statements and other information are not furnished to Mortgagee/Beneficiary by Mortgagor, or, if furnished, are not in a form reasonably acceptable to Mortgagee/Beneficiary, Mortgagee/Beneficiary may, in addition to any other remedies which Mortgagee/Beneficiary has under this Mortgage, the Note, or any of the Other Security Documents, audit the books and records of Mortgagor, and any expense of the audit shall be added to the Debt. Immediately upon the appointment of a receiver of the Mortgage Property by a court of competent jurisdiction, Mortgagor shall deliver all books and records or other documents required to be maintained under the terms of this section to such receiver.

18.    Performance of Other Agreements. Mortgagor shall observe and perform each and every term to be observed or performed by Mortgagor pursuant to the terms of any agreement or recorded instrument affecting or

pertaining to the Mortgage Property.

19.    Events of Default.  Any one or more of the following events shall be an event of default (an "Event of Default") under this Mortgage:

(a)    If any payment under the Note is not paid within any grace period in the Note, or if any other monetary obligation of Mortgagor to Mortgagee/Beneficiary, the Note, this Mortgage or the Other Security Documents is not paid within the due date and any specified grace period; or

(b)    If any of the Impositions is not paid before it becomes delinquent; or

(c)    If the Policies are not kept in good standing; or

(d)    If Mortgagor does not comply with the provisions of Paragraph 12 of this Mortgage; or

(e)    If any representation or warranty of Mortgagor, or of any person guaranteeing or otherwise liable for payment of the Debt (a "Guarantor") or in any such Guaranty, or in any certificate, report, financial statement or other instrument furnished in connection with the making of the Note, this Mortgage, or any such Guaranty, shall be false or misleading in any material respect and the inaccuracy is not cured to the reasonable satisfaction of Mortgagee/Beneficiary, within fifteen (15) days after written notice from Mortgagee/Beneficiary to Mortgagor provided, however, that if the default is of a kind that it cannot be cured within 15 days, then Mortgagor shall not be in default if Mortgagor commences curing the default within a reasonable time and diligently completes the cure within a reasonable time, but not more than 60 days after the date of the original written notice; or

(f)    If Mortgagor or any Guarantor makes an assignment for the benefit of creditors;

(g)    If Mortgagor fails to proceed and continue with construction on the Mortgage Property in accordance with the schedules agreed to with Mortgagee/Beneficiary or any senior construction lender; or

(h)    If a receiver, liquidator or trustee of Mortgagor or of any Guarantor shall be appointed or if Mortgagor or any Guarantor is adjudicated a bankrupt or insolvent, or if any petition for bankruptcy, reorganization or arrangement pursuant to federal bankruptcy law, or any similar federal or state law, is filed by or against Mortgagor or any Guarantor, or if any proceeding for the dissolution or liquidation of Mortgagor or of any Guarantor is instituted and, if such appointment, adjudication, petition or proceeding was involuntary, if it is not discharged, stayed or dismissed within thirty (30) days or if Mortgagor is generally not paying its debts as they become due; or

(i)    If Mortgagor defaults under any other mortgage, Mortgage or security agreement covering any part of the Mortgage Property whether it be superior or inferior to the lien of this Mortgage, and if such default is not cured within any applicable cure or grace period; or

(j)    If the Mortgage Property is subjected (i) to any lien which is superior to the lien of this Mortgage, other than a lien for local real estate taxes and assessments not yet delinquent and any Permitted Encumbrances, or (ii) to any mechanic's, materialmen's, construction, or other lien which is superior to the lien of this Mortgage and such lien remains undischarged for thirty (30) days.

20.    Rights and Remedies on Default.  If one or more of the Events of Default occurs, the Debt shall include interest on the Debt at the Default Rate as defined in the Note upon any unpaid portion of the Debt and the entire Debt shall become immediately due and payable at the option of the Mortgagee/Beneficiary, without further notice or demand; and, in addition, whether or not Mortgagee/Beneficiary exercises its option, it may exercise all rights and

Page: 13 of 23
10:35 A
07/31/06
ACS-5739123-M-2006-23
Lawrence Kestenbaum, Washtenaw
L- 4572  P- 673

remedies available to it under the law, including the following.

(a) Mortgagee/Beneficiary may enter upon, take immediate possession of, manage, and operate the Mortgage Property or any part thereof, make repairs and alterations and do any acts that Mortgagee/Beneficiary deems reasonable to protect the security of the Mortgage, including remedies contained in any of the Other Security Documents; and either with or without taking possession, in its own name, collect the rents, issues and profits, including those past due and unpaid, and apply the rents, less costs and expenses of operation and collection, including reasonable attorneys' fees and the Mortgagee/Beneficiary's costs, upon the Debt and in such order as Mortgagee/Beneficiary determines. If Mortgagee/Beneficiary requests, Mortgagor shall assemble and make available to Mortgagee/Beneficiary at the Premises any of the Mortgage Property that has been removed. None of the foregoing actions shall cure or waive any Event of Default and Mortgagee/Beneficiary shall be entitled to exercise every remedy allowed in this Mortgage or by law after an Event of Default.

(b) Mortgagee/Beneficiary shall be entitled to the immediate ex parte appointment of a receiver, without notice, to take possession of and protect the Mortgage Property and to operate it and collect the rents, issues and profits from it.; and for purposes of such appointment, Mortgagor agrees that same shall be necessary and required in the event Mortgagee/Beneficiary requests same.

( c) Mortgagee/Beneficiary may bring suit to foreclose this Mortgage or to enforce any of its provisions.

(d) Trustee may, subject to the statutes and laws of the State of Michigan, and upon Mortgagee/Beneficiary's request, elect to sell the Mortgage Property or its parts as follows:

(i) Trustee may proceed as if all of the Mortgage Property were real property in accordance with subparagraph (iv) below, or Trustee may elect to treat any of the Mortgage Property which consists of a right in action or which is property that can be severed from the Premises without causing structural damage thereto as if the same were personal property and dispose of the same in accordance with subparagraph (iii) below, separate from the sale of real property, the remainder of the Mortgage Property being treated as real property.

(ii) Trustee may cause any such sale or other disposition to be conducted immediately following the expiration of any grace period, if any, provided in this Mortgage or the Note, or Trustee may delay any such sale or other disposition as Trustee deems to be in its best interest. If Trustee conducts more than one sale, Trustee may, at its option, cause the sales to be conducted simultaneously, or successively on the same day, or at different days or times and in such order as Trustee may deem to be in its best interest.

(iii) If Trustee elects to dispose of personal property as permitted in subparagraph (i) above, it or Mortgagee/Beneficiary may dispose of any part thereof in any manner permitted by Article 9 of the Michigan Uniform Commercial Code. Both Mortgagor and Mortgagee/Beneficiary shall be eligible to purchase any part of such property at any sale if it is the kind of collateral that is customarily sold on a recognized market or the subject of a standard price. Any such disposition may be either public or private, as Trustee or Mortgagee/Beneficiary may so elect, subject to the provisions of the Michigan Uniform Commercial Code. Trustee or Mortgagee/Beneficiary shall give Mortgagor at least ten (10) days' prior written notice naming the debtor and the secured party, describing the collateral subject to disposition, the method of disposition, the time and place of disposition and a statement indicating the debtor is entitled to an accounting of the unpaid indebtedness and stating the charge, if any, for the accounting, and if such notice is sent to Mortgagor at the address above, it shall constitute reasonable notice to Mortgagor.

(iv) If Trustee elects to sell the Mortgage Property which is real property or which it has elected to treat as real property, upon such election, Trustee shall give such Notice of Default and election to sell as

may then be required by law. Thereafter, upon the expiration of such time and the giving of such Notice of Sale as may then be required by law, Trustee, at the time and place specified by the Notice of Sale, shall sell such Mortgage Property, or any portion thereof specified by Trustee, at public auction to the highest bidder for cash in lawful money of the United States. Trustee may, and upon request of Mortgagee/Beneficiary shall, from time to time, postpone the sale by public announcement at the time and place noticed for the sale. If the Mortgage Property consists of several lots or parcels, Trustee may designate the order in which such lots or parcels are offered for sale or sold. Any person, including Mortgagor, Trustee, or Mortgagee/Beneficiary may purchase at the sale. At the sale the Trustee shall execute and deliver to the purchaser, a deed specifying the time and when same will become operative if premises are not redeemed conveying the property so sold, but without any covenant or warranty, express or implied, after which the purchaser shall be entitled to immediate possession.

(v) This instrument, if an Event of Default occurs, may be foreclosed as to any of Mortgage Property in any manner permitted by the laws of the State, and any foreclosure suit may be brought by the Trustee or by the Mortgagee/Beneficiary. In a foreclosure is commenced by the then Trustee, the Mortgagee/Beneficiary may at any time before the sale of the Mortgage Property direct the Trustee to abandon the sale, and may then institute or complete a suit for the collection of the Note and the other Debt, and for judicial foreclosure of this Mortgage. It is agreed that if the Mortgagee/Beneficiary institutes a suit for the collection of the Note or any other Debt and for the judicial foreclosure of this Mortgage, the Mortgagee/Beneficiary may at any time before the entry of a final judgment in said suit dismiss it, and require the Trustee to sell the Mortgage Property under the provisions of this Mortgage.

(vi) The recital of facts, such as default, the giving of Notice of Default, and Notice of Sale, terms of sale, purchaser, payment of purchase money, and any other fact affecting the regularity or validity of such sale or disposition in a Sheriff's Deed or other conveyance, shall be conclusive proof of the truth of those facts and conclusive against all persons.

(vii) The proceeds of any sale or disposition, together with any other sums which then may be held by Trustee or Mortgagee/Beneficiary, shall be applied as follows: FIRST, to the expenses of such sale or disposition together with Trustee's fees and reasonable attorneys' fees and expenses, Mortgagee/Beneficiary's costs and the actual cost of publishing, recording, mailing and posting notice; SECOND, to the cost of any search or other policy of title procured in connection with the sale, if applicable, and recordation and transfer taxes and other charges, if any, on any release or deed of reconveyance; THIRD, to the payment of all amounts secured by this Mortgage, the Note and the Other Security Documents, and all other sums due Mortgagee/Beneficiary from Mortgagor; FOURTH, to all other sums secured hereby; and the remainder, if any, to the person or persons legally entitled thereto in the order of their priority.

(e) Trustee, upon the request of Mortgagee/Beneficiary, may foreclose in any manner authorized and permitted by the statutes and laws of the State of Michigan.

Without limiting the generality of the foregoing, Trustee is expressly authorized to conduct a "unified sale" if authorized under the Michigan Uniform Commercial Code.

Any payment of the principal amount of Debt subsequent to the entire amount of the Debt becoming immediately due and payable under the terms of this Paragraph shall be deemed a prepayment of such principal amount subject to liquidated damages as specified under the terms of the Note.

The Mortgagee/Beneficiary shall have the right to become the purchaser at any sale held by any Trustee or by any receiver or public officer, and Mortgagee/Beneficiary shall have the right to credit upon the amount of the bid made, to the extent necessary to satisfy such bid, the Debt owing to Mortgagee/Beneficiary, or if Mortgagee/Beneficiary holds less than all of such indebtedness the pro rata part owing to Mortgagee/Beneficiary,

ACS-5739123-M-2006-2.1
Laurence Kestenbaum, Washtenaw

accounting to all other beneficiaries or noteholders not joining in such bid in cash for the portion of such bid or bids apportionable to such nonbidding Mortgagee/Beneficiary or noteholder.

The Trustee may be removed at any time with or without cause by an instrument in writing executed by the Mortgagee/Beneficiary, or if there is more than one Mortgagee/Beneficiary, by a writing executed by a majority in ownership of the Beneficiaries. In case of the death, resignation, removal or disqualification of the Trustee or if for any reason the Mortgagee/Beneficiary shall deem it desirable to appoint a substitute or successor trustee to act instead of the herein named Trustee or any substitute or successor trustee, then the Mortgagee/Beneficiary shall have the right and hereby is authorized and empowered to appoint a successor trustee, or a substitute trustee, without other formality than appointment and designation in writing executed by the Mortgagee/Beneficiary and the authority hereby conferred shall extend to the appointment of other successor and substitute trustees successively until the Debt finally has been paid in full or until the Mortgage Property is sold. All references herein to the Trustee shall refer to the Trustee from time to time acting hereunder.

20. Right to Cure Defaults. If an Event of Default occurs, Mortgagee/Beneficiary may, but is not required to, and without notice to or demand on Mortgagor and without releasing Mortgagor from any obligation, make or do the same in such manner and to such extent as Mortgagee/Beneficiary may deem necessary or advisable to protect the security hereof. Mortgagee/Beneficiary is authorized to enter upon the Mortgage Property for such purposes, or appear in, defend, or bring any action or proceeding to protect its interest in the Mortgage Property or to foreclose this Mortgage or collect the Debt, and the cost and expense thereof (including attorneys' fees and expenses) with interest as provided in this Paragraph, shall be due upon demand from Mortgagee/Beneficiary to Mortgagor. All such costs and expenses incurred by Mortgagee/Beneficiary in remedying such Event of Default or in appearing in, defending, or bringing any such action or proceeding shall be paid at the Default Rate as stated and defined in the Note and secured by this Mortgage.

21. Non-Waiver. Mortgagee/Beneficiary's failure to insist upon strict performance of a term of this Mortgage shall not be a waiver of any term of this Mortgage. Mortgagor shall not be relieved of its obligations because (i) Mortgagee/Beneficiary fails to comply with any request of Mortgagor or any Guarantor to take any action to foreclose this Mortgage or otherwise enforce any of its provisions or of the Note or Other Security Documents, (ii) any part of the Mortgage Property is released or substituted, or (iii) Mortgagor or Mortgagee/Beneficiary extend the time of payment or otherwise modify or supplement the terms of the Note, this Mortgage or the Other Security Documents. Mortgagee/Beneficiary may resort to any other security held by Mortgagee/Beneficiary in such order and manner as Mortgagee/Beneficiary, in its discretion, may elect. The rights of Mortgagee/Beneficiary under this Mortgage shall be separate, distinct and cumulative and none shall be given effect to the exclusion of the others. No act of Mortgagee/Beneficiary shall be construed as an election to proceed under any one provision to the exclusion of other provisions.

22. Liability. If Mortgagor consists of more than one person as individuals or as partners, the obligations and liabilities of each such person hereunder shall be joint and several.

23. Security Agreement. This Mortgage is both a real property Mortgage and a "security agreement" within the meaning of the Michigan Uniform Commercial Code. The Mortgage Property includes both real and personal property and all other rights and interests, whether tangible or intangible in nature, of Mortgagor in the Mortgage Property. MORTGAGOR HEREBY GRANTS TO MORTGAGEE/BENEFICIARY, AS SECURITY FOR THE DEBT, A SECURITY INTEREST IN MORTGAGE PROPERTY TO THE FULL EXTENT THAT THE MORTGAGE PROPERTY MAY BE SUBJECT TO THE MICHIGAN UNIFORM COMMERCIAL CODE OR THE UNIFORM COMMERCIAL CODE OF ANY OTHER STATE OR STATES WHERE THE MORTGAGE PROPERTY IS SITUATED (said portion of the Mortgage Property so subject to a Commercial Code being called in this Paragraph the "**Collateral**").

10:35 A
07/31/06
ACS-5739123-M 2006-23
Lawrence Kestenbaum, Washtenaw          L- 4572   P- 673

If an Event of Default occurs, Mortgagee/Beneficiary shall have and may exercise immediately and without demand, all rights and remedies granted to a secured party upon default under the Michigan Uniform Commercial Code, including, the right to take possession of the Collateral, and to take such other measures as Mortgagee/Beneficiary may deem reasonably necessary or advisable for the care, protection and preservation of the Collateral. Mortgagor shall pay to Mortgagee/Beneficiary on demand any expenses, including attorneys' fees and expenses, incurred by Mortgagee/Beneficiary in protecting its interest in the Collateral and in enforcing its rights to the Collateral. Any notice of sale, disposition or other intended action by Mortgagee/Beneficiary as to the Collateral sent to Mortgagor at least ten (10) days prior to such action, shall constitute reasonable notice to Mortgagor. The proceeds of any disposition of the Collateral may be applied by Mortgagee/Beneficiary to the payment of the Debt in the priority and proportions as Mortgagee/Beneficiary in its discretion shall deem proper.

24. Fixture Filing. From the date of its recording, this Mortgage shall be effective as a financing statement filed as a fixture filing as to all goods constituting part of the Mortgage Property which are or become fixtures related to the real estate described in this Mortgage. For this purpose, the following information is set forth:

(a) Name and address of Debtor:
Grove Park Homes L.L.C.
3062 Chandler Avenue
Lincoln Park, MI 48146

(b) Name and Address of Secured Party:
Point Center Financial, Inc.
30900 Rancho Viejo Road, Suite 100
San Juan Capistrano, CA 92675

(c) This document covers goods that are or are to become fixtures.

(d) Description of Real Estate: See Exhibit "A".

(e) Owner of Record of Real Estate: Debtor.

(f) This Financing Statement covers Proceeds.

(g) Products of the Collateral are also covered.

25. Authority. Mortgagor has full power, authority and legal right to execute this Mortgage, and to create the security interest in the Mortgage Property contained in this Mortgage and to keep and observe all of the terms of this Mortgage.

26. Actions and Proceedings. Trustee and Mortgagee/Beneficiary have the right to appear in and defend any action or proceeding affecting the Mortgage Property and to bring any action or proceeding, in the name of Mortgagor, which Trustee and Mortgagee/Beneficiary, in their discretion, decide should be brought to protect their interests in the Mortgage Property. Trustee and Mortgagee/Beneficiary shall, at their option, be subrogated to the lien of any mortgage, Mortgage, or other security instrument discharged in whole or in part by the Debt, and any such subrogation rights shall constitute additional security for the payment of the Debt.

27. Inapplicable Provisions. Whenever possible, each provision of this Mortgage shall be interpreted

Page: 16 of 23
10:35 A
07/31/06
ACS-57391?3-M-2006-23
Laurence Kestenbaum, Washtenaw
L- 4572   P- 673

as effective and valid under applicable law, but if any provision of this Mortgage is prohibited or invalid, it shall be ineffective to the extent necessary to make the remaining provisions valid.

28. Duplicate Originals. This Mortgage may be executed in any number of duplicate originals and each such duplicate original shall be deemed to be one and the same instrument.

29. Certain Definitions. Words used in this Mortgage in singular or plural form shall include the other, and the word **"Mortgagor"** shall mean "each Mortgagor or any subsequent owner or owners of the Mortgage Property or any part thereof or any interest therein," the word **"Trustee"** shall mean "Trustee and any successor trustee appointed by Mortgagee/Beneficiary according to law," the word **"Mortgagee/Beneficiary"** shall mean "Mortgagee/Beneficiary or any subsequent holder of the Note or any part thereof or any of the Debt," and the word **"Note"** shall mean "the Note or any other evidence of indebtedness secured by this Mortgage, including Addendum," the word **"person"** shall include an individual, corporation, partnership, trust, unincorporated association, government, governmental authority, or other entity, the words **"Mortgage Property"** shall include any portion of the Mortgage Property or interest in it, and the word **"Debt"** shall mean the principal balance of the Note with interest as provided in the Note and this Mortgage and all other indebtedness, obligations, and liabilities due pursuant to the Note, this Mortgage, or the Other Security Documents; whenever the context may require, any pronouns used shall include the corresponding masculine, feminine or neuter forms, and the singular form of nouns and pronouns shall include the plural and vice versa.

30. No Oral Change. This Mortgage may not be modified, amended, changed, discharged, waived or terminated orally, but only by a writing signed by the person against whom the enforcement of the modification, amendment, change, waiver, discharge or termination is sought.

31. WAIVERS. TO THE EXTENT PERMITTED BY LAW, MORTGAGOR HEREBY WAIVES TRIAL BY JURY IN ANY ACTION OR PROCEEDING BROUGHT BY EITHER PARTY AGAINST THE OTHER ARISING OUT OF OR CONNECTED WITH THIS Mortgage OR THE Debt.

32. Further Acts, Etc. Mortgagor will, at its cost, do, execute, acknowledge and deliver all other acts, deeds, conveyances, mortgages, assignments, notices of assignments, transfers and assurances as Mortgagee/Beneficiary shall require for to facilitate the performance of the terms of this Mortgage or for filing, registering or recording this Mortgage and, on demand, will execute and deliver any financing statement, chattel mortgages or comparable security instruments, to evidence more effectively the lien upon the Mortgage Property.

33. Headings, Etc. The headings and captions of various paragraphs of this Mortgage are for convenience of reference only and are not to be considered as affecting the contents of the paragraphs.

34. Filings of Mortgage, Etc. Mortgagor shall pay all filing, registration or recording fees and all attorneys' fees, commissions, and expenses for the preparation, execution and acknowledgment of the Note, this Mortgage, and the Other Security Documents.

35. Usury Laws. No terms of this Mortgage, the Note, or any of the Other Security Documents, shall be construed to create a contract for the use, forbearance or detention of money requiring payment of interest at a rate in excess of the Maximum Rate (as such term is defined in the Note). The Mortgagor shall never be required to pay interest at a rate in excess of the Maximum Rate. The provisions of this Paragraph shall control over all other provisions of any other instrument executed in connection herewith or executed to secure the Debt that is in apparent conflict with this Paragraph. If Mortgagee/Beneficiary collects monies that are deemed to be interest that would increase the effective interest rate on the Note to a rate in excess of the Maximum Rate, all such excessive sums shall be applied to the reduction of the unpaid principal balance and not to the payment of interest, and if a surplus remains after full

ACS-5739123-M-2006-23
Lawrence Kestenbaum, Washtenaw          L- 4572   P- 673

payment of principal and lawful interest, the surplus shall be refunded to Mortgagor in cash and Mortgagor hereby agrees to accept such refund.

36. <u>INDEMNIFICATION</u>. MORTGAGOR SHALL PROTECT, INDEMNIFY AND SAVE HARMLESS TRUSTEE AND MORTGAGEE/BENEFICIARY FROM ALL LIABILITIES, OBLIGATIONS, CLAIMS, DAMAGES, PENALTIES, CAUSES OF ACTION, COSTS AND EXPENSES (INCLUDING WITHOUT LIMITATION REASONABLE ATTORNEYS' FEES AND EXPENSES) IMPOSED UPON OR INCURRED BY OR ASSERTED AGAINST TRUSTEE OR MORTGAGEE/BENEFICIARY BECAUSE OF (A) FRAUD OR MATERIAL MISREPRESENTATION BY OR ON BEHALF OF THE MORTGAGOR; (B) ANY FAILURE ON THE PART OF MORTGAGOR TO PERFORM OR COMPLY WITH ANY OF THE TERMS OF THIS Mortgage OR THE OTHER SECURITY DOCUMENTS; (C) OWNERSHIP OF THE MORTGAGE PROPERTY OR ANY INTEREST IN IT OR THE RECEIPT OF ANY RENTS; (D) ANY ACCIDENT, INJURY TO OR DEATH OF PERSONS OR LOSS OF OR DAMAGE TO PROPERTY OCCURRING IN, ON OR ABOUT THE MORTGAGE PROPERTY; (E) ANY USE, NONUSE OR CONDITION IN, ON OR ABOUT THE MORTGAGE PROPERTY OR ANY PART THEREOF; OR (F) PERFORMANCE OF ANY LABOR OR SERVICES OR THE FURNISHING OF ANY MATERIALS OR OTHER PROPERTY TO THE MORTGAGE PROPERTY, WHETHER OR NOT CAUSED IN WHOLE OR IN PART BY THE NEGLIGENT ACTS OR OMISSIONS OF THE MORTGAGEE/BENEFICIARY OR INDIVIDUALS OR ENTITIES ACTING AS THE AGENTS OR EMPLOYEES OF MORTGAGEE/BENEFICIARY. HOWEVER, SUCH INDEMNITY SHALL NOT APPLY TO MATTERS CAUSED BY OR ARISING OUT OF THE GROSS NEGLIGENCE OR WILLFUL MISCONDUCT OF TRUSTEE OR MORTGAGEE/BENEFICIARY, OR ANY OF ITS AGENTS, OR AS TO LIABILITIES, OBLIGATIONS, CLAIMS, DAMAGES, PENALTIES, CAUSES OF ACTION, COSTS AND EXPENSES BASED SOLELY ON FACTS OR CIRCUMSTANCES OCCURRING ONLY SUBSEQUENT TO SUCH TIME, IF ANY, THAT MORTGAGEE/BENEFICIARY BECOMES THE OWNER OF THE MORTGAGE PROPERTY BY WAY OF FORECLOSURE OF THE LIEN OF THE Mortgage, DEED IN LIEU OF SUCH FORECLOSURE, OR OTHERWISE. ANY AMOUNT PAYABLE TO TRUSTEE OR MORTGAGEE/BENEFICIARY BECAUSE OF THE APPLICATION OF THIS PARAGRAPH SHALL BECOME IMMEDIATELY DUE AND PAYABLE UPON DEMAND BY MORTGAGEE/BENEFICIARY, AND SHALL BEAR INTEREST AT THE DEFAULT RATE, AS STATED AND DEFINED IN THE NOTE, FROM THE DATE OF SUCH DEMAND. THE OBLIGATIONS OF MORTGAGOR UNDER THIS PARAGRAPH SHALL SURVIVE ANY TERMINATION OR SATISFACTION OF THIS Mortgage.

37. <u>Reconveyance of Mortgage Property</u>. Upon payment of all sums secured by this Mortgage, the Mortgagee/Beneficiary shall fully discharge this Mortgage, and shall execute such documents necessary to effectuate same of record and shall deliver same to Mortgagor.

38. <u>Governing Law</u>. This Mortgage shall be governed and construed under Michigan law.

39. <u>Duties and Obligations of Trustee</u>. Mortgagor agrees that: (a) the duties and obligations of Trustee shall be determined solely by the express provisions of this Mortgage and the Trustee shall not be liable except for the performance of such duties and obligations as are specifically set forth in this Mortgage, and no implied covenants or obligations shall be imposed upon Trustee; (b) no provision of this Mortgage shall require Trustee to expend or risk its own funds, or otherwise incur any financial obligation in the performance of any of its duties, or in the exercise of any of its rights or powers, if it shall have grounds for believing that the repayment of such funds or adequate indemnity against such risk or liability is not reasonably assured of it; (c) Trustee may consult with counsel of its own choosing and the advice of such counsel shall be full and complete authorization and protection in the respect of any actions taken by it in good faith and in reliance upon the advice; (d) Trustee shall not be liable for any action taken by it in good faith and reasonably believed by it to be authorized or within the discretion or rights or powers conferred upon it by this Mortgage.

Trustee shall have the right, at its sole option and from time to time, to substitute one or more

ACS-5739123-M-2006-23
Lawrence Kestenbaum, Washtenaw

trustees for the Trustee named above, without notice to Mortgagor. In the event there shall be more than one trustee, either trustee may act hereunder.

40. <u>Request for Notice of Default and Notice of Sale.</u> Mortgagor hereby requests that a copy of any notice of default and of any notice of sale pursuant to the nonjudicial foreclosure of this Mortgage be mailed to Mortgagor at the mailing address set forth in the preamble above.

41. <u>ENVIRONMENTAL INDEMNIFICATION.</u> MORTGAGOR HEREBY AGREES, AT ITS SOLE COST AND EXPENSE, TO UNCONDITIONALLY INDEMNIFY, DEFEND, AND HOLD TRUSTEE AND MORTGAGEE/BENEFICIARY AND ITS DIRECTORS, OFFICERS, EMPLOYEES AND AGENTS HARMLESS FROM AND AGAINST ANY LOSS, LIABILITY, DAMAGE (WHETHER DIRECT OR CONSEQUENTIAL), EXPENSES, CLAIMS, PENALTIES, FINES, INJUNCTIONS, SUITS, PROCEEDINGS, DISBURSEMENTS OR EXPENSES (INCLUDING, WITHOUT LIMITATION, ATTORNEYS' AND EXPERTS' FEES AND DISBURSEMENTS AND COURT COSTS) (COLLECTIVELY, THE "**LIABILITIES**") (A) AS A RESULT OF THE INCORRECTNESS OF ANY REPRESENTATION OR WARRANTY OF MORTGAGOR OR ANY OTHER PARTY CONTAINED IN ANY DOCUMENTATION OR REPRESENTATION REGARDING THE CONDITION OF THE PROPERTY, GIVEN BY MORTGAGOR (AND, PERHAPS OTHER INDIVIDUALS OR ENTITIES) TO MORTGAGEE/BENEFICIARY; (B) ARISING UNDER ANY HAZARDOUS SUBSTANCE LAW; OR (C) ANY OTHER LIABILITIES, IF ANY, WHICH MAY BE INCURRED BY OR ASSERTED AGAINST TRUSTEE OR MORTGAGEE/BENEFICIARY DIRECTLY OR INDIRECTLY RESULTING FROM THE PRESENCE OF A HAZARDOUS SUBSTANCE ON THE MORTGAGE PROPERTY, WHETHER OR NOT CAUSED IN WHOLE OR IN PART BY THE NEGLIGENT ACTS OR OMISSIONS OF THE TRUSTEE AND MORTGAGEE/BENEFICIARY OR INDIVIDUALS OR ENTITIES ACTING AS THE AGENTS OR EMPLOYEES OF THE TRUSTEE OR MORTGAGEE/BENEFICIARY; <u>PROVIDED, HOWEVER,</u> THAT SUCH INDEMNITY SHALL NOT APPLY TO MATTERS CAUSED BY OR ARISING OUT OF THE GROSS NEGLIGENCE OR WILLFUL MISCONDUCT OF TRUSTEE OR MORTGAGEE/BENEFICIARY, OR ANY OF ITS AGENTS, OR WITH RESPECT TO LIABILITIES, OBLIGATIONS, CLAIMS, DAMAGES, PENALTIES, CAUSES OF ACTION, COSTS AND EXPENSES BASED SOLELY ON FACTS OR CIRCUMSTANCES OCCURRING ONLY SUBSEQUENT TO THE TIME, IF ANY, THAT MORTGAGEE/BENEFICIARY BECOMES THE OWNER OF THE MORTGAGE PROPERTY BY WAY OF FORECLOSURE OF THE LIEN OF THIS Mortgage, DEED IN LIEU OF SUCH FORECLOSURE, OR OTHERWISE. FOR PURPOSES OF THIS AGREEMENT, THE FOLLOWING TERMS SHALL MEAN AS FOLLOWS: (A) "**ENVIRONMENT**" MEANS ANY SURFACE OR SUBSURFACE WATER, WATER VAPOR, SURFACE OR SUBSURFACE LAND, AIR, FISH, WILDLIFE, MICROORGANISMS AND ALL OTHER NATURAL RESOURCES; (B) "**GOVERNMENTAL AUTHORITY**" MEANS THE FEDERAL GOVERNMENT, OR ANY STATE OR OTHER POLITICAL SUBDIVISION THEREOF, OR ANY AGENCY, COURT OR BODY OF THE FEDERAL GOVERNMENT, ANY STATE OR OTHER POLITICAL SUBDIVISION THEREOF, EXERCISING EXECUTIVE, LEGISLATIVE, JUDICIAL, REGULATORY OR ADMINISTRATIVE FUNCTIONS; (C) "**HAZARDOUS SUBSTANCE**" MEANS AND INCLUDES ASBESTOS OR ANY SUBSTANCE CONTAINING ASBESTOS, POLYCHLORINATED BIPHENYLS, ANY EXPLOSIVES, RADIOACTIVE MATERIALS, CHEMICALS KNOWN OR SUSPECTED TO CAUSE CANCER OR REPRODUCTIVE TOXICITY, POLLUTANTS, EFFLUENTS, CONTAMINANTS, EMISSIONS, INFECTIOUS WASTES, ANY PETROLEUM OR PETROLEUM-DERIVED WASTE OR PRODUCT OR RELATED MATERIALS AND ANY ITEMS DEFINED AS HAZARDOUS, SPECIAL OR TOXIC MATERIALS, SUBSTANCES OR WASTE UNDER ANY HAZARDOUS SUBSTANCE LAW, OR ANY MATERIAL WHICH SHALL BE REMOVED FROM THE MORTGAGE PROPERTY PURSUANT TO ANY ADMINISTRATIVE ORDER OR ENFORCEMENT PROCEEDING OR IN ORDER TO PLACE THE MORTGAGE PROPERTY IN A CONDITION THAT IS SUITABLE FOR ORDINARY USE; (D) "**HAZARDOUS SUBSTANCE LAWS**" COLLECTIVELY MEANS AND INCLUDES ANY PRESENT AND FUTURE LOCAL, STATE, FEDERAL OR INTERNATIONAL LAW OR TREATY RELATING TO PUBLIC HEALTH, SAFETY OR THE ENVIRONMENT INCLUDING WITHOUT LIMITATION, THE RESOURCE CONSERVATION AND RECOVERY ACT, AS AMENDED ("RCRA"), 42 U.S.C. § 6901 <u>ET SEQ.</u>, THE COMPREHENSIVE ENVIRONMENTAL RESPONSE,

Page: 19 of 23
10:35 A
07/31/06
ACS-5739123-M-2006-23
Lawrence Kestenbaum, Washtenaw
L- 4572   P- 573

COMPENSATION, AND LIABILITY ACT ("CERCLA"), 42 U.S.C. § 9601 ET SEQ., AS AMENDED BY THE SUPERFUND AMENDMENTS AND REAUTHORIZATION ACT OF 1986 ("SARA"), THE HAZARDOUS MATERIALS TRANSPORTATION ACT, 49 U.S.C. § 1801 ET SEQ., THE CLEAN WATER ACT, 33 U.S.C. § 1251 ET SEQ., THE CLEAN AIR ACT, AS AMENDED 42 U.S.C. § 7401 ET SEQ., THE TOXIC SUBSTANCES CONTROL ACT, 15 U.S.C. § 2601 ET SEQ., THE SAFE DRINKING WATER ACT, 42 U.S.C. § 300F ET SEQ., THE URANIUM MILL TAILINGS RADIATION CONTROL ACT, 42 U.S.C. § 7901 ET SEQ., THE OCCUPATIONAL SAFETY AND HEALTH ACT, 29 U.S.C. § 655 ET SEQ., THE FEDERAL INSECTICIDE, FUNGICIDE AND RODENTICIDE ACT, 7 U.S.C. § 136 ET SEQ., THE NATIONAL ENVIRONMENTAL POLICY ACT, 42 U.S.C. § 4321 ET SEQ., THE NOISE CONTROL ACT, 42 U.S.C. § 4901 ET SEQ., AND THE EMERGENCY PLANNING AND COMMUNITY RIGHT-TO-KNOW ACT, 42 U.S.C. § 11001 ET SEQ., AND THE AMENDMENTS, REGULATIONS, ORDERS, DECREES, PERMITS, LICENSES OR DEED RESTRICTIONS NOW OR LATER PROMULGATED UNDER SUCH LAW; AND MICHIGAN NATURAL RESOURCES AND ENVIRONMENTAL PROTECTION ACT; AND (E) **"RELEASE"** MEANS ANY DISCHARGING, DISPOSING, EMITTING, LEAKING, PUMPING, POURING, EMPTYING, INJECTING, ESCAPING, LEACHING, DUMPING OR SPILLING INTO THE ENVIRONMENT (INCLUDING THE ABANDONMENT OR DISCARDING OF BARRELS, CONTAINERS AND OTHER CLOSED RECEPTACLES). The provisions of this Paragraph are sometimes referred to as the **"Environmental Indemnity Provisions."**

The indemnity in this Paragraph is intended to be operable under 42 U.S.C. 9607(e)(1), and any successor section thereof, and shall survive the foreclosure, release or reconveyance of this Mortgage, whether by payment of the Debt or any deed-in-lieu of foreclosure of the Mortgage Property. In addition, this Paragraph is intended to be cumulative of any rights of the Mortgagee/Beneficiary under Michigan Natural Resources and Environmental Protection Act, as from time to time amended, being MCLA 324.101 et seq. Mortgagor hereby waives any restrictions or limitations that such statutes may impose on Mortgagor's liability or Mortgagee/Beneficiary's rights or remedies under this Paragraph.

In the event that any portion of the Mortgage Property is determined to be environmentally contaminated (as "environmental contamination" is defined in MCLA 324.2101(1)(e), then, without otherwise limiting or in any way affecting Mortgagee/Beneficiary's or Trustee's rights and remedies under this Mortgage, Mortgagee/Beneficiary may elect to (i) waive its lien on such environmentally contaminated Mortgage Property, and (ii) exercise the rights and remedies of an unsecured creditor, including reduction of its claim against Mortgagor to judgment and any other rights and remedies permitted by law, including, but not limited to, the right of Mortgagee/Beneficiary to transfer said Mortgage Property to the State of Michigan pursuant to MCLA 324.20126(7).

THE NOTE, THIS MORTGAGE, ANY GUARANTY, ANY ENVIRONMENTAL INDEMNITY, AND THE OTHER SECURITY DOCUMENTS COLLECTIVELY REPRESENT THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

Page: 20 of 23
10:35 P
07/31/06
ACS-5739123-M-2006-23
Lawrence Kestenbaum, Washtenaw
L- 4572   P- 673

**IN WITNESS WHEREOF**, the undersigned has executed and delivered this Mortgage, effective as of the date first above written.

Mortgagor:

Grove Park Homes L.L.C., a Michigan Limited Liability Company

By: _Ronald P. Lloyd_ _____

Ronald P. Lloyd, Managing Member

By: _Glenda L. Ault_ _____

Glenda L. Ault, Managing Member

Page: 21 of 23
10:35 A
07/31/06
ACS-5739123-M-2006-23
Lawrence Kestenbaum, Washtenaw          L- 4572   P- 673

Page: 22 of 23
10:35 A
07/31/06
ACS-5739123-M-2006-23
Lawrence Kestenbaum, Washtenaw
L- 4572  P- 673

STATE OF *MI* )
                    ) ss.
COUNTY OF *Washtenaw* )

On this *26* day of JULY, 2006, before me, a Notary Public in and for said County,

personally appeared RONALD P. LLOYD *as managing member* and GLENDA L. AULT, *as Managing Member of Great Park Home,* to me known to be the same person(s) *LLC.*

described in and who executed the within instrument, who acknowledged the same to be his/her free act and

deed.

GARY SELESKO
Notary Public, Wayne County, MI
Acting in Washtenaw County
MY Commission Expires 12-9-2006

_____
                        Notary Public
_____ County, _____
My commission expires:
Acting in the County of _____

DRAFTED BY:
LOIS BEJERANO
POINT CENTER FINANCIAL INC.
30900 RANCHO VIEJO RD. SUITE 100
SAN JUAN CAPISTRANO, CA 92675



ACS-5739123-M-2006-23
Lawrence Kestenbaum, Washtenaw

L- 4572   P- 673

Loan #: 206074

Order #: 4-62385

EXHIBIT A

YPSILANTI TOWNSHIP, WASHTENAW COUNTY, MICHIGAN

Legal Description:

Parcel I:

Lots 1, 4, 5, 7, 12, 15, 19, 22, 26, 27, 30, 32, 33, 35, 37, 38, 45, 46, 47, 48, 51, 52, 54, 57, 61, 62, 65, 66, 67, 68, 71, 76, 78, 80, 81, 83, 86, 87, 89, 93, 96, 102, 108, 113, 117, 118, 119, 124, 132, 133, 135, 137, 139, 141, 142, 148, 149, and 151, Grove Park Homes Subdivision, as recorded in Liber 19 of Plats, Pages 72 through 74, Washtenaw County Records

Parcel II:

Lots 24, 50, 90, 109, 125, and 147, Grove Park Homes Subdivision, as recorded in Liber 19 of Plats, Pages 72 through 74, Washtenaw County Records

Parcel III:

Lots 10, 11, 36, 40, 44, 64, 69, 70, 94, 100, 104, and 150, Grove Park Homes Subdivision, as recorded in Liber 19 of Plats, Pages 72 through 74, Washtenaw County Records

| Lot | Item No. | Lot | Item No. | Lot | Item No. |
|-----|----------|-----|----------|-----|----------|
| 1 | 11-24-108-026 | 61 | 11-24-110-002 | 132 | 11-24-106-012 |
| 4 | 11-24-108-023 | 62 | 11-24-110-001 | 133 | 11-24-106-013 |
| 5 | 11-24-108-022 | 65 | 11-24-181-003 | 135 | 11-24-106-015 |
| 7 | 11-24-108-020 | 66 | 11-24-181-004 | 137 | 11-24-106-017 |
| 12 | 11-24-108-015 | 67 | 11-24-181-005 | 139 | 11-24-107-001 |
| 15 | 11-24-108-012 | 68 | 11-24-181-006 | 141 | 11-24-107-003 |
| 19 | 11-24-108-008 | 71 | 11-24-181-009 | 142 | 11-24-107-004 |
| 22 | 11-24-108-005 | 76 | 11-24-111-026 | 148 | 11-24-107-010 |
| 26 | 11-24-108-001 | 78 | 11-24-111-024 | 149 | 11-24-107-011 |
| 27 | 11-24-109-018 | 80 | 11-24-111-022 | 151 | 11-24-107-013 |
| 30 | 11-24-109-015 | 81 | 11-24-111-021 | 24 | 11-24-108-003 |
| 32 | 11-24-109-013 | 83 | 11-24-111-019 | 50 | 11-24-110-013 |
| 33 | 11-24-109-012 | 86 | 11-24-111-016 | 90 | 11-24-111-012 |
| 35 | 11-24-109-010 | 87 | 11-24-111-015 | 109 | 11-24-105-008 |
| 37 | 11-24-109-008 | 89 | 11-24-111-013 | 125 | 11-24-106-005 |
| 38 | 11-24-109-007 | 93 | 11-24-111-009 | 147 | 11-24-107-009 |
| 45 | 11-24-110-018 | 96 | 11-24-111-006 | 10 | 11-24-108-017 |
| 46 | 11-24-110-017 | 102 | 11-24-105-001 | 11 | 11-24-108-016 |
| 47 | 11-24-110-016 | 108 | 11-24-105-007 | 36 | 11-24-109-009 |
| 48 | 11-24-110-015 | 113 | 11-24-105-012 | 40 | 11-24-109-005 |
| 51 | 11-24-110-012 | 117 | 11-24-105-016 | 44 | 11-24-109-001 |
| 52 | 11-24-110-011 | 118 | 11-24-105-017 | 64 | 11-24-181-002 |
| 54 | 11-24-110-009 | 119 | 11-24-105-018 | 69 | 11-24-181-007 |
| 57 | 11-24-110-006 | 124 | 11-24-106-004 | 70 | 11-24-181-008 |
| 94 | 11-24-111-008 | 100 | 11-24-111-002 | 104 | 11-24-105-003 |
| 150 | 11-24-107-012 | | | | |

SUBMITTED
FOR RECORDING

JUL 3 1 2006

Washtenaw County, MI
Clerk Register's Office





OFFICIAL SEAL    Washtenaw Co., MI
12/28/07    Lawrence Kestenbaum
L-4659  P-741    Clerk Register



Page: 1 of 2
ACS-5826282-AFF-2007-2    03:52 P
Lawrence Kestenbaum, Washtenaw    12/28/07
L-4659  P-741



## AFFIDAVIT CONCERNING STATUS OF TITLE
## PURSUANT TO MCL § 565.451a

STATE OF CALIFORNIA     )
                          ) SS
COUNTY OF ORANGE     )

Dan J. Harkey, being first duly sworn, deposes and says:

1.     I am of legal age and under no disability.

2.     I am President of National Financial Lending, Inc., a California Corporation, whose address is 30900 Rancho Viejo Drive, Suite 100, San Juan Capistrano, CA 92678.

3.     I have reviewed the Mortgage (the "Mortgage") given by Grove Park Homes L.L. C., a Michigan limited liability company, as Mortgagor in favor of National Financial Lending Inc., as Trustee and Point Center Financial Inc., as Mortgagee/Beneficiary made effective as of July 19, 2006, encumbering certain property as described therein and on Exhibit A hereto (the "Property"), which was recorded in the office of the Washtenaw County Register of Deeds on July 31, 2006, in Liber 4572 on Page 673.

4.     National Financial Lending, Inc. has assigned its interests, if any, in the Mortgage to the Mortgagee under the Mortgage, and has no interest in the Mortgage, the Property or in any promissory notes or other documents relating thereto.

5.     I make this affidavit on personal knowledge. If sworn as a witness, I can testify competently to the facts stated in this affidavit.



Page: 2 of 2
03:52 P
12/28/07
ACS-5826282-AFF-2007-2
Lawrence Kestenbaum, Washtenaw
L-4659 P-741

FURTHER DEPONENT SAITH NOT.

Dated: 12.14.07

National Financial Lending, Inc.

By: _____

Its: President


State of California )
) ss.
County of Orange )

The foregoing affidavit was sworn and subscribed to and acknowledged before me on

this 14ᵗʰ day of December, 2007, by _Dan J. Harkey_ (name),

_President_ (title) of National Financial Lending, Inc., a California

corporation, for the corporation.

_____

Notary Public, ORANGE County, California

My Commission Expires: May 2, 2010

M. COURTNEY HAGEE
COMM. #1663388
Notary Public-California
ORANGE COUNTY
My Comm. Exp. May 2, 2010

THIS INSTRUMENT PREPARED BY:

Kay Standridge Kress, Esq.
Pepper Hamilton LLP
36ᵗʰ Floor
100 Renaissance Center
Detroit, MI 48243-1157

WHEN RECORDED RETURN TO:
LANDAMERICA - NCS
1050 Wilshire Drive, Suite 310
Troy, MI 48084
Case No. AAK 6443

#9130474 v1 (999922.2006)

SUBMITTED
FOR RECORDING
DEC 2 8 2007
Washtenaw County, MI
Clerk Register's Office

SUBMITTED
FOR RECORDING
DEC 2 0 2007
Washtenaw County, MI
Clerk Register's Office

-2-



CONTINUING GUARANTY

THIS CONTINUING GUARANTY ("Guaranty"), dated as of July 19, 2006, is made by Ronald P. Lloyd ("Guarantor") in favor of Point Center Financial, Inc., a California corporation as identified in the Note defined below ("Lender").

Recitals

A.  Grove Park Homes L.L.C., a Michigan Limited Liability Company ("Borrower") has applied to Lender for a loan ("Loan") of One Million Seven Hundred Nine Thousand Seven Hundred and No/100 Dollars ($1,709,700.00) ("Loan").  The Loan will be evidenced by a Promissory Note Secured by a Mortgage ("Note"), dated on or about the same date as this Guaranty and executed by Borrower in favor of Lender in the principal amount of One Million Seven Hundred Nine Thousand Seven Hundred and No/100 Dollars ($1,709,700.00), which loan will be secured by, among other security, the Mortgage, Security Agreement and Fixture Filing With Assignment of Rents and Agreements dated on or about the same date as this Guaranty executed by Borrower in favor of Lender ("Mortgage"), and covering the real and personal property described in the Mortgage ("Trust Property").

B.  As a condition to making the Loan, Lender has required that Guarantor execute and deliver this Guaranty.

Now, therefore, in order to induce Lender to enter into the Loan Agreement and to make the Loan, and in consideration thereof, Guarantor hereby agrees as follows:

**1.  Guaranty.**  Guarantor absolutely and unconditionally guarantees the punctual payment when due, whether at stated maturity, by acceleration, or otherwise, of all obligations of Borrower now or later existing under the Loan Documents (as defined in the Mortgage) whether for principal, interest, fees, expenses, or otherwise including, without limitation, all real property taxes and assessments affecting the Trust Property, all costs and expenses, including insurance premiums, of maintaining in full force all policies of insurance required pursuant to the Mortgage, and all costs and expenses, including repair and maintenance costs, required in order to maintain the Trust Property in the condition required under the Mortgage (collectively, "Obligations").  The terms "indebtedness" and "obligations" are used in their most comprehensive sense and include all debts, obligations, and liabilities of Borrower incurred or created, with or without notice to Guarantor, whether voluntary or involuntary and however arising, whether due or not due, absolute or contingent, liquidated or unliquidated, determined or undetermined, whether Borrower is liable individually or jointly with others, and whether recovery on any indebtedness or obligations is now or later becomes barred by any statute of limitations or is or later becomes otherwise unenforceable.

**2.  Guaranty Absolute.**
(a) Guarantor guarantees that the Obligations will be paid and performed strictly in accordance with the terms of the Loan Documents, regardless of any law, regulation, or order now or later in effect in any jurisdiction affecting any of the terms or the rights of Lender with respect to that.  The liability of Guarantor under this Guaranty will be absolute and unconditional irrespective of:
(i) any lack of validity or enforceability of any of the Loan Documents (or any other agreement or instrument relating to the Loan Documents);
(ii) any change in the time, manner, or place of payment of, or in any other term of, any of the Obligations, or any other amendment or waiver of or any consent to departure from any of the Loan Documents, including, without limitation, changes in the terms of disbursement of the Loan proceeds or



repayment, modifications, extensions (including extensions beyond and after the original term), or renewals of payment dates, changes in interest rate, or the advancement of additional funds by Lender in its discretion regardless of any change in Borrower's financial condition;

(iii) any exchange, release, or nonperfection of any collateral, or any release or amendment or waiver of or consent to departure from any other guaranty, for any of the Obligations; or

(iv) any other circumstance that might otherwise constitute a defense available to, or a discharge of, Borrower in respect of the Obligations of Guarantor under this Guaranty.

(b) Regardless of any termination of this Guaranty or the cancellation of the Note or any other agreement evidencing the Obligations, if at any time any payment of any of the Obligations (from any source) is rescinded, repaid, or must otherwise be returned by Lender due to the insolvency, bankruptcy, or reorganization of Borrower or Guarantor, or for any other circumstance, this Guaranty will continue to be effective or be reinstated, as the case may be, as though that payment had not been made.

### 3. Guaranty Independent; Waivers.

(a) Guarantor agrees that:

(i) the obligations under this Guaranty are joint and several and are independent of and in addition to the undertakings of Borrower pursuant to the Loan Documents, any evidence of indebtedness issued in connection with the Loan, any mortgage or security agreement given to secure the Loan, any other guarantees given in connection with the Loan, and any other obligations of Guarantor to Lender;

(ii) a separate action may be brought to enforce the provisions of this Guaranty whether Borrower is a party in any action or not;

(iii) Lender may at any time, or from time to time, in its sole discretion and without effecting Guarantor's Obligations under this Guaranty:

(A) extend or change the time of payment or performance or the manner, place, or terms of payment or performance of any of the Obligations;

(B) exchange, release, or surrender any of the collateral security, or any part of it, by whomever deposited, which is now or may later be held by Lender in connection with any of the Obligations;

(C) sell or purchase any of the collateral at public or private sale, or at any broker's board, in the manner permitted by law, and after all costs and expenses of every kind for collection, sale, or delivery, the net proceeds of any sale may be applied by Lender on any of the Obligations; and

(D) settle or compromise with Borrower, or any other person liable, any of the Obligations, or subordinate the payment of the Obligations, or any part of them, to the payment of any other debts or claims, that may at any time be due or owing to Lender or any other person or corporation; and

(iv) Lender will be under no obligation to marshal any assets in favor of Guarantor or in payment of any of the Obligations.

(b) Guarantor waives:

(i) presentment, demand, protest, notice of acceptance, notice of dishonor, notice of nonperformance, and any other notice with respect to any of the Obligations and this Guaranty, and promptness in commencing suit against any party, or in giving any notice to or making any claim or demand on Guarantor;

(ii) any right to require Lender to proceed against Borrower, proceed against or exhaust any security held from Borrower, or pursue any remedy in Lender's power;

(iii) any defense based on any legal disability or other defense of Borrower, any other guarantor, or other person or by reason of the cessation or limitation of the liability of Borrower from any cause other than full payment of all sums payable under the Note and the performance of the other Obligations;

(iv) any defense based on any lack of authority of the officers, directors, partners, or agents



purporting to act on behalf of Borrower or any principal of Borrower or any defect in the formation of Borrower or any principal of Borrower;

(v) to the fullest extent permitted by law, all rights and benefits under any law or statute purporting to reduce a guarantor's obligations in proportion to the principal obligation;

(vi) any defense based on the application by Borrower of the proceeds of the Loan for purposes other than the purposes represented by Borrower to Lender or intended or understood by Lender or Guarantor;

(vii) any defense it may acquire by reason of Lender's election of any remedy against it or Borrower or both, including, without limitation, election by Lender to exercise its rights under the power of sale in the Mortgage and the consequent loss by Guarantor of the right to recover any deficiency from Borrower;

(viii) any defense based on Lender's failure to disclose to Guarantor any information concerning Borrower's financial condition or any other circumstances bearing on Borrower's ability to pay all sums payable under the Note or any of the other Obligations;

(ix) any defense based on any statute or rule of law that provides that the obligation of a surety must be neither larger in amount nor in any other respects more burdensome than that of a principal;

(x) any defense based on Lender's election, in any proceeding instituted under the Federal Bankruptcy Code, of the application of Section 1111(b)(2) of the Federal Bankruptcy Code or any successor statute;

(xi) any defense based on any borrowing or any grant of a security interest under §364 of the Federal Bankruptcy Code;

(xii) any right of subrogation, contribution, or reimbursement against Borrower, any right to enforce any remedy that Lender has or may in the future have against Borrower, any other right that Lender may now or later acquire against Borrower that arises from the existence or performance of Guarantor's obligations under this Guaranty or would arise with respect to the Obligations, and any benefit of, and any right to participate in, any security for the Obligations now or in the future held by Lender;

(xiii) the benefit of any statute of limitations affecting the liability of Guarantor or the enforcement of the Guaranty, and

(xiv) to the fullest extent permitted by law, all rights and benefits under any law or statute purporting to limit the amount of any deficiency judgment that might be recoverable following the occurrence of a trustee's sale under a deed of trust; any law or statute stating that no deficiency may be recovered on a real property purchase money obligation; and any law or statute stating that no deficiency may be recovered on a note secured by a mortgage on real property in case the real property is sold under the power of sale contained in the mortgage, if those statutory sections have any application.

Guarantor agrees that the payment of all sums payable under the Note or any of the other Obligations or any other act that tolls any statute of limitations applicable to the Note or the other Obligations will similarly operate to toll the statute of limitations applicable to Guarantor's liability.

(c) Guarantor waives all rights and defenses arising out of an election of remedies by the creditor, even though that election of remedies, such as a nonjudicial foreclosure with respect to security for a guaranteed obligation, has destroyed the guarantor's rights of subrogation and reimbursement against the principal. Furthermore, Guarantor understands and acknowledges that if Lender forecloses judicially or nonjudicially against any real property security for the Loan, that foreclosure could impair or destroy any ability that Guarantor may have to seek reimbursement, contribution, or indemnification from Borrower or others based on any right Guarantor may have of subrogation, reimbursement, contribution, or indemnification for any amounts paid by Guarantor under this Guaranty. Guarantor further understands and acknowledges that in the absence of this provision, the potential impairment or destruction of Guarantor's rights, if any, may



entitle Guarantor to assert a defense to this Guaranty. By executing this Guaranty, Guarantor freely, irrevocably, and unconditionally:

(i) waives and relinquishes that defense, and agrees that Guarantor will be fully liable under this Guaranty even though Lender may foreclose judicially or nonjudicially against any real property security for the Loan;

(ii) agrees that Guarantor will not assert that defense in any action or proceeding that Lender may commence to enforce this Guaranty; and

(iii) acknowledges and agrees that Lender is relying on this waiver in making the Loan, and that this waiver is a material part of the consideration that Lender is receiving for making the Loan.

**4. Does Not Supersede Other Guarantees.** The obligations of Guarantor will be in addition to any obligations of Guarantor under any other guarantees of the Obligations or any obligations of Borrower or any other persons or entities previously given or later to be given to Lender, and this Guaranty will not affect or invalidate any other guarantees. The liability of Guarantor to Lender will at all times be deemed to be the aggregate liability of Guarantor under the terms of this Guaranty and of any other guarantees previously or later given by Guarantor to Lender.

**5. Representations and Warranties.** Guarantor represents and warrants as follows:

(a) Power and Authority.

(i) Guarantor has the requisite power and authority to execute and deliver this Guaranty.

(ii) Guarantor(s) is an individual.

(b) Validity of Guaranty.

(i) The execution, delivery, and performance by Guarantor of this Guaranty are within the power of Guarantor, have been duly authorized by all requisite corporate or partnership action, as appropriate, have received all necessary governmental approval, and will not violate any provision of law, any order of any court or agency of government, the formation documents of Guarantor, or any indenture, agreement, or any other instrument to which Guarantor is a party or by which Guarantor or its property is bound, or be in conflict with, result in a breach of, or constitute (with due notice and lapse of time) a default under any indenture, agreement, or other instrument, or result in the creation or imposition of any lien, charge, or encumbrance of any nature on any of its property or assets, except as contemplated by the provisions of the Loan Documents.

(ii) This Guaranty, when delivered to Lender, will constitute a legal, valid, and binding obligation enforceable against Guarantor in accordance with its terms.

(c) Financial Statements.

(i) All financial statements and data that have been given to Lender by Guarantor with respect to Guarantor:

(A) are complete and correct in all material respects as of the date given;

(B) accurately present the financial condition of Guarantor on each date as of which and the results of Guarantor's operations for the periods for which they have been furnished; and

(C) have been prepared in accordance with generally accepted accounting principles consistently applied throughout the periods covered.

(ii) All balance sheets and the notes that Guarantor furnished to Lender disclose all material liabilities of Guarantor, fixed and contingent, as of their respective dates.

(iii) There has been no adverse change in the financial condition or operations of Guarantor since:

(A) the date of the most recent financial statement given to Lender with respect to Guarantor; or

(B) the date of the financial statement given to Lender immediately prior to the date of this

